

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-267-CV

LIFEGUARD BENEFIT SERVICES,
INC. AND THE AMACORE
GROUP, INC.

APPELLANTS

V.

DIRECT MEDICAL NETWORK
SOLUTIONS, INC. AND
CONSUMER ASSISTANCE
SERVICES ASSOCIATION

APPELLEES

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellants Lifeguard Benefit Services, Inc. and The Amacore Group, Inc.

bring this accelerated, interlocutory appeal from the imposition of a temporary

injunction (1) enjoining Appellants from denying Appellees Direct Medical

Network Solutions, Inc. ("DirectMed") and Consumer Assistance Services Association ("CASA") access to and possession of data and information regarding Appellees' members and customers, (2) requiring Appellants to turn over to Appellees data and information regarding Appellees' members and customers, and (3) requiring Appellants to turn over to a third party data and information regarding individuals whom Appellants contend are their customers only. In one issue, divided into three subissues, Appellants argue that the trial court abused its discretion by entering the injunction because Appellees did not demonstrate an extreme hardship and prove an imminent threat of irreparable harm, the injunction alters the status quo and provides Appellees the ultimate relief sought in the suit, and the order granting the injunction is vague and overly broad. We will modify the temporary injunction and affirm it as modified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Ty Bruggemann founded CASA, DirectMed, and Lifeguard. Bruggemann is the president of CASA and DirectMed. Lifeguard merged with Amacore in 2007; Amacore is Lifeguard's parent company. Lifeguard terminated Bruggemann's employment in 2008.

CASA is a not-for-profit association organized under the laws of the State of Illinois. Consumers who purchase a membership in CASA qualify to purchase benefit plans marketed by DirectMed and other retailers. DirectMed

is a corporation organized under the laws of the State of Delaware. It is a third-party retailer of health and lifestyle benefit plans that provides its members discounts on medical services and lifestyle benefits. All DirectMed customers are members of CASA, but all CASA members are not customers of DirectMed; CASA members qualify to purchase plans from retailers other than DirectMed. CASA has approximately 10,000 members, "over 35% of which have purchased DirectMed plans."

Lifeguard engages in a number of business activities, including packaging lifestyle and benefit plans that are sold through third-party marketers and providing back-office administrative services for private label clients like DirectMed. The back-office support includes managing customer accounts.

Lifeguard contracted with CASA to sell CASA memberships and to provide CASA with back-office administrative support. Lifeguard's packages do not always include CASA benefits. Lifeguard also entered into an agreement with DirectMed to market and service DirectMed's products. According to Appellees' original petition, the agreements between Lifeguard and CASA and between Lifeguard and DirectMed are the only reason that Lifeguard and Amacore have possession of data concerning DirectMed's and CASA's members. According to Bruggemann, "Under the Contracts between Lifeguard

3

and DirectMed and CASA, the data concerning its members, their claims, and benefits belongs to DirectMed and CASA."

On or about June 24 or 25, 2009, DirectMed received a Civil Investigative Demand ("CID") from the Office of the Attorney General of the State of Minnesota. The CID states in part that "the Attorney General has received complaints alleging that Direct Medical Network Solutions, Inc. engages in deceptive and fraudulent misrepresentations in the sale of its services to Minnesota consumers, in violation of Minnesota law." It also required DirectMed to answer interrogatories and to deliver documents requested for production.

On June 24, 2009, Scott Smith, Amacore's chief operating officer and Lifeguard's operations officer, notified Bruggemann that effective immediately, all DirectMed data could be accessed via a web-based portal to Lifeguard's software system referred to as L.I.S.A. (Lifeguard Integrated Software Application).[1] According to Appellees, the data that DirectMed was able to access through the portal was "very limited" and insufficient to fully respond to the CID.

---

[1] According to Rocky Williams, a DirectMed employee, data and information about DirectMed and CASA members is located in the L.I.S.A. software system.

4

On June 25, 2009, Bruggemann requested that he be given access to all of the DirectMed and CASA data and records under the control of Lifeguard and Amacore.[2] Several DirectMed representatives visited Lifeguard's offices the next day but were told that the data was not ready. On June 30, 2009, Smith responded to Bruggemann's request and said that the agreements between Lifeguard and DirectMed and between Lifeguard and CASA "govern the data, materials, etc. to which you are entitled"; that DirectMed has access "to a wide range of data through the web portal access provided to you by Lifeguard"; that Lifeguard was assembling the requested data and information; and that "Lifeguard is committed to assisting in any way possible and practicable to help meet the requests of the" Minnesota Attorney General. Smith also indicated that "[to the extent we determine that we are not contractually required to produce one or more categories of requested documents, we will notify you of the basis for our objection."

On July 1, 2009, Bruggemann sent Smith an itemized list of information that DirectMed was requesting from Lifeguard. Lifeguard responded to the data request a few days later, providing responses to the requests, objecting to

---

[2] ... The demand included, but was not limited to, "all of the client records, member records, billing records, agent records, member complaints, promotional material[,] and all other member & financial data with regards to DirectMed and CASA."

certain requests, and stating that Lifeguard will produce certain documents. In an attached letter, Lifeguard indicated that some of DirectMed's requests exceeded the scope of the information requested by the CID and that much of the information requested is "readily available" to Bruggemann and "entirely under [his] control as the President of DirectMed and through . . . access to the LISA system." At the hearing on Appellees' motion for the temporary injunction, when asked about Lifeguard's response to DirectMed's request for information, Bruggemann testified that Lifeguard refused to provide the data and information that DirectMed was seeking pursuant to the information request.

Appellees filed their original petition and application for a temporary restraining order and injunctive relief on July 9, 2009. They alleged that Lifeguard provides back-office administrative support for each of them, that Lifeguard maintains possession of all of the data and information concerning their members and customers, that they had demanded full access to all of their customer and member data being held by Lifeguard in order to prepare responses to the CID, and that Appellants had refused to turn over the member and customer data and information. In addition to seeking injunctive relief, Appellants alleged claims for a declaratory judgment, breach of contract, and conversion.

6

On July 10, 2009, Appellants and Appellees entered into a rule 11 agreement providing in part as follows:

•Appellants shall provide Appellees possession of and unfettered access to all data, information, and records regarding DirectMed and CASA members in their health and wellness plan and their full access to all data which is Appellants.

•Appellees will provide today a record layout for the data, records, and information to be transferred to it. Appellants will transfer all data, records, and information concerning all DirectMed customers and CASA members to Appellees within twenty-four hours unless that time frame is impracticable.

•Appellants shall continue providing Appellees all electronic data, information, and records concerning customers or members of DirectMed and CASA on a daily basis to the extent practical. The transfer shall be accomplished by transferring the data through an FTP site and then a record layout to be identified by Appellees.

The trial court held a hearing on Appellees' application for a temporary injunction on July 23, 2009. Williams, who was DirectMed's liaison to Lifeguard, testified about the events that transpired relevant to the rule 11 agreement after its entry. He recalled that Appellees had agreed to use a record layout provided by Appellants but that the layout they provided was incomplete and not "all-inclusive."[3] Also, Lifeguard provided Appellants with data on a

---

[3] ... According to Williams,

There was information that - - files that would not be usable because there was misalignment, or there was fields that were left blank, which by designation in the record layout it would have

7

memory stick instead of transferring the data by way of an FTP site. According to Williams, the data transferred was incomplete and unusable. Williams met with Smith and eventually reached an agreement on a record layout to provide the data and information that Appellees were requesting, but Appellants have not provided Appellees with a subsequent "data dump." Williams visited Lifeguard's offices and was given an opportunity to look through and take information that was provided to him. Williams opined that Appellees have only approximately 20% of the data and information that they have demanded.

Smith testified that the record layout to be used to transfer the data has changed several times and that Lifeguard is in the process of furnishing DirectMed and CASA their data. He agreed that DirectMed and CASA are entitled to all of the data and information that belong to them, but he testified that Lifeguard has possession of a large amount of data and information that *does not* belong to DirectMed and CASA, and he expressed concern about who should and who should not be considered a member of CASA. One such example of Lifeguard's disagreement with DirectMed over who should be considered a member of CASA concerned those who are members or customers

_____

contained specific data. And in the review of that data, there was no information in those fields, which then leaves the question of why is this blank? What's the problem here?

8

of the Lifeguard Health Options program. Williams testified that Lifeguard was selling memberships in CASA through the Lifeguard Health Options program, and he discussed a fulfillment materials package for Lifeguard Health Options that members receive, which includes a reference that Lifeguard Health Options is a product provided through CASA. Smith, on the other hand, denied that those who are members of the Lifeguard Health Options program are also members of CASA.[4] Smith testified that Lifeguard does not want to turn over to DirectMed and CASA data concerning the members of the Lifeguard Health Options program because DirectMed and CASA could then effectively divert the billing of those contracts away from Lifeguard, resulting in Lifeguard losing money.

The trial court granted Appellees' request for a temporary injunction and found as follows:

> Unless Defendants Lifeguard Benefit Services, Inc. and The Amacore Group, Inc., together with their agents, servants, employees and those acting in concert with them are immediately enjoined, Plaintiffs will suffer immediate and irreparable injury and extreme hardship for which there is no adequate remedy at law. In part, the Court finds that absent a temporary injunction, (1) Plaintiffs will be denied possession of the data, information and records regarding [DirectMed] and [CASA] members to which they have the right of possession[;] (2) Plaintiffs will not be able to

_____

[4] ... The order granting the temporary injunction refers to these individuals as the "Contested CASA Members."

properly respond to the Minnesota Attorney General's [CID] or other investigations; (3) Plaintiffs will not be able to properly prepare and defend itself in connection with such investigations; (4) Plaintiff's failure to prepare and respond adequately to any investigations or actions by Defendants would create grounds for further action against them, could affect the nature of the investigation, potentially expose Plaintiffs and/or its officers to charges being initiated, and impact their goodwill, business, client relationships, reputation in the business community, and ability to compete on a level playing field in the industry; (5) any charges arising from the failure to respond to any investigation or complaint would cause Plaintiffs immediate irreparable harm and damage through the loss of customers, damage to its relationships with clients, benefit providers, vendors, loss of good will, and the permanent injury to Plaintiffs' business reputation; (6) failing to have possession of the data, information, and records concerning all of its customers['] and members['] records would injure their ability to service and direct service of those customers and members and their benefits and to investigate and evaluate the services being provided to those customers and members[.]

The trial court ordered as follows:

1) That [Lifeguard] and [Amacore] . . . are hereby enjoined from denying Plaintiffs . . . from having immediate possession of and unfettered access to all data, information and records, regarding DirectMed and CASA members, excluding "Contested CASA Members" as hereafter defined;

2) Defendants shall, on or before 5:00 P.M. on August 17, 2009, transfer an external hard drive devise to be provided by Plaintiffs, and to deliver to Plaintiffs, all data, information and records including but not limited to credit card and bank information, regarding DirectMed and CASA members, excluding Contested CASA Members, in the record layout format attached to this Order as Appendix A.

3) Defendants shall on or before 5:00 P.M. on August 17, 2009 transfer to an independent third party vendor mutually

selected by the parties by use of an external hard drive devise to be provided by Plaintiffs file all data, information and records regarding Contested CASA Members in the same record layout format as that specified in the preceding paragraph. If the parties are unable to mutually [select] a third party vendor by 5 P.M. on August 10, 2009, then the court appoints Edwin Bell to act as the third party vendor and authorizes Edwin Bell to hire and obtain such services as may be necessary.

4)     Defendants shall update the transfers referred to in Paragraphs 2 and 3 hereof on a daily basis by use of an SFTP site designated by Plaintiffs.

5)     The term "Contested CASA Members" shall mean those members and participants in plans offered or administered by the Defendants whose plan documents reference, mention, or allude to [CASA] in any manner but whom Defendants assert are not DirectMed customers or CASA Members.

6)     The third party vendor selected to receive the data, information and records regarding Contested CASA Members as set forth in Paragraph 3 above shall hold and maintain the data, information and records transmitted to it in accordance with this Order and shall permit the parties to this litigation access to the data, information, and records to verify compliance with the orders of this Court but shall not permit copying of the data except as further ordered by the Court.

7)     The third party vendor shall not permit dissemination of the data, information and records except as set forth above and subject to further order of the Court.

8)     Use of data, information, and records transmitted to the third party vendor shall be for litigation purposes only unless and until further order of the Court.

9)     The cost of the third party vendor shall be shared equally by the parties hereto.

11

10) The Defendants, their agents, servants and employees shall within twenty-four (24) hours of receipt of any inquiry, investigative demand, or like communication received by Defendants regarding the Plaintiffs, their members or any plan offered by the Plaintiffs forward the same to Plaintiffs.

11) The Defendants shall be enjoined from engaging in any responses or communications with the Minnesota Attorney General or any other investigative unit purportedly on Plaintiffs' behalf.

## III. STANDARD OF REVIEW

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and will not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied).

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief. *Argyle ISD ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 237 (Tex. App.—Fort Worth 2007, no pet.). Whether to grant or deny a request for a

12

temporary injunction is within the trial court's discretion, and we will not reverse its decision absent an abuse of discretion. *Butnaru*, 84 S.W.3d at 204. Under an abuse of discretion standard, the court of appeals cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules and principles. *Id.* at 211. A trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Id.* When reviewing a trial court's order on an application for temporary injunction, we cannot substitute our judgment for that of the trial court, even if we would have reached a contrary conclusion. *Greenpeace, Inc. v. Exxon Mobil Corp.*, 133 S.W.3d 804, 808 (Tex. App.—Dallas 2004, pet. denied). Instead, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order is so arbitrary that it exceeds the bounds of reasonable discretion. *Amend v. Watson*, No. 05-08-01585-CV, 2009 WL 1912693, *1 (Tex. App.—Dallas July 6, 2009, no pet.).

## IV. IRREPARABLE INJURY

In the first subissue of their only issue, Appellants argue that the trial court abused its discretion by entering the temporary injunction because Appellees failed to introduce clear and compelling evidence of an extreme hardship and failed to prove an imminent threat of irreparable harm.

13

The party seeking injunctive relief bears the burden to demonstrate irreparable injury. *N. Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925 (Tex. App.—Dallas 2006, no pet.) ("A trial court abuses its discretion in granting a temporary injunction unless 'it is clearly established by the facts that one seeking such relief is threatened with an actual irreparable injury if the injunction is not granted.'"). A party proves irreparable injury for injunction purposes by proving that damages would not adequately compensate the injured party or cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot*, 281 S.W.3d at 227. Damages are an inadequate remedy if they are difficult to calculate; "assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy." *Frequent Flyer Depot*, 281 S.W.3d at 228–29. But an injunction is not proper when the claimed injury is merely speculative. *Id*. at 227.

A.    Mandatory or Prohibitive Injunction

Appellants initially contend that the injunction is mandatory both as to the "Contested CASA Members" and the DirectMed and non-contested CASA members because the injunction's paragraph 2 requires Appellants to transfer

14

to Appellees data and information regarding DirectMed and CASA Members, excluding "Contested CASA Members," and paragraph 3 requires Appellants to act by affirmatively transferring records relating to Contested CASA Members to a third-party vendor. A prohibitive injunction forbids conduct, and a mandatory injunction requires it. *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A mandatory injunction is proper when necessary to prevent irreparable injury and extreme hardship. *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981). Appellees concede that the injunction can be viewed as either prohibitive—because it requires that traditionally provided data continue to be transferred—or mandatory—because it requires Appellants to provide data and information.

### B. DirectMed

DirectMed pleaded that it will suffer immediate, irreparable injury in the absence of a temporary injunction because it will not be able to respond, prepare, and defend itself in regard to the CID and because any future investigation or charges would "undoubtedly cause [it] potential harm and damage through the loss of customers, loss of good will, and the permanent injury to [its] business reputation due to the implicit belief of wrongdoing." DirectMed further pleaded that its potential damages attributable to Appellants'

15

refusal to turn over the demanded data and information cannot be calculated and that it will suffer irreparable injury because Appellants' conduct will subject them to potential civil or criminal liability and jeopardize their business reputation and their relationship with their customers.

At the hearing on DirectMed's application for a temporary injunction, DirectMed introduced evidence that the Office of the Attorney General for the State of Minnesota had issued the CID. The CID indicates that Minnesota's Attorney General has received complaints alleging that DirectMed engages in deceptive and fraudulent misrepresentations in the sale of its services to Minnesota consumers in violation of Minnesota law. The CID also propounds interrogatories, requests the production of documents, and requires DirectMed to respond to the interrogatories within twenty days of the service of the CID and to respond to the requests for production within fifteen days of service of the CID.

Bruggemann testified that DirectMed needs access to its data held by Lifeguard in order to fully and properly respond to the Minnesota CID. Williams testified that it is important to have DirectMed's data so that it can properly respond to the CID, and he opined that having only part of the data that it has demanded could interfere with its ability to defend itself against claims of fraudulent misrepresentation and deceptive trade practices with consumers.

16

Bruggemann testified that the data DirectMed was able to access from the L.I.S.A. system through the web-based portal was insufficient to fully respond to the CID, and Williams thought that Appellees have only approximately 20% of the data and information that they have demanded from Appellants. In the absence of a response complying with the CID, the Minnesota Attorney General may apply to a court for an order compelling compliance in accordance with Minnesota law and, consistent with the trial court's order, Bruggemann testified that he was concerned about DirectMed's potential loss of goodwill, loss of reputation in the industry, and loss of customers.

The evidence thus demonstrates that DirectMed cannot fully and properly respond to the CID without the data and information that Lifeguard possesses. DirectMed has a remedy for damages against Lifeguard for breach of contract, but the damages resulting from Lifeguard's failure to abide by the terms of its agreement with DirectMed would be difficult to determine or calculate and, consequently, inadequate because DirectMed is threatened with the Minnesota Attorney General's pursuit of remedies it deems necessary against DirectMed and the potential resulting adverse impact on DirectMed's reputation, business goodwill, and customer base.

Underlying Appellants' argument is the contention that DirectMed's claimed injury is merely speculative. This argument is belied not only by the

evidence that the Minnesota Attorney General may seek remedies against DirectMed for failure to comply with the CID but also by the evidence demonstrating the clear disagreement between Lifeguard and DirectMed regarding whether customers or members of the Lifeguard Health Options program are members of CASA. Lifeguard does not consider that customers or members of the Lifeguard Health Options program are members of CASA even though materials received by those customers include a reference that Lifeguard Health Options is a product provided through CASA. The trial court could have reasonably inferred from this evidence that Lifeguard (or a third-party marketer) was selling memberships that included literature indicating membership in CASA but not considering those who purchased the memberships to be members of CASA. In light of the CID's statement that the Minnesota Attorney General has received complaints that DirectMed—whose back-office support is handled by Lifeguard—engages in deceptive and fraudulent misrepresentations in the sale of its services, DirectMed's claimed injury is not merely speculative.

Regarding imminency, the Minnesota Attorney General granted DirectMed an extension of time to respond to the CID with no set response date, but we decline to accept Appellants' suggestion that DirectMed offered no evidence

regarding the imminency of the irreparable injury it will suffer simply because the response date has been deferred once.

Although a court will generally not enforce contractual rights by injunction because a party can "rarely" establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available, this circumstance is tempered by the abuse of discretion standard of review, which prohibits this court from substituting its judgment for that of the trial court. *Butnaru*, 84 S.W.3d at 211. Viewing the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, we hold that DirectMed presented some evidence reasonably supporting the trial court's conclusion that DirectMed will suffer irreparable injury in the absence of a temporary injunction, whether the injunction is considered mandatory or not. Thus, the trial court's conclusion that DirectMed will suffer irreparable injury was not arbitrary and unreasonable nor made without reference to guiding rules and principles. We overrule this part of Appellants' first subissue.

C. CASA

To obtain a temporary injunction, CASA, like DirectMed, had to demonstrate irreparable injury. The evidence shows that CASA and DirectMed are distinct business entities organized under the laws of different states. All

DirectMed customers are also members of CASA, but all CASA members are not customers of DirectMed.

The CID is directed to DirectMed, not CASA. It states that the Minnesota Attorney General has information establishing reasonable grounds to believe that DirectMed, not CASA, has violated one or more Minnesota consumer protection statutes. The CID also requires that DirectMed, not CASA, answer interrogatories and respond to requests for production. The CID thus advises of no grounds or allegations related to CASA's conduct, and it requires that no action be taken by CASA.

Bruggemann, CASA's president, opined that because CASA is referenced in the CID, he (presumably on behalf of DirectMed, CASA, or both) needs CASA's data and information in Lifeguard's possession so that DirectMed can fully respond to the CID. Bruggemann was referring to interrogatory number two, which requests that DirectMed provide certain information about CASA's and DirectMed's business relationship. Interrogatory number two, however, does not request that CASA provide any information in response to the CID, and it requests that DirectMed provide information related to other entities in addition to CASA, including "Beech Street Corporation," "United Health Care," "The United States Life Insurance Company in the City of New York," and "The Health Connection." There is no evidence that DirectMed requires any

20

information from these entities, who are not parties to this litigation, to fully respond to the CID.

Appellees commingle the arguments and evidence that they contend support the trial court's conclusion that they each will suffer irreparable harm. Having distinguished DirectMed's evidence of irreparable harm, CASA directs us to no evidence that it will suffer any irreparable injury if DirectMed fails to fully and properly respond to the CID.[5] Viewing the evidence in the light most favorable to the trial court's order, we hold that the trial court abused its discretion by concluding that CASA will be irreparably injured in the absence of a temporary injunction. *See Butnaru*, 84 S.W.3d at 204. We sustain this part of Appellants' first subissue.

## V. STATUS QUO AND ULTIMATE OBJECT OF SUIT

In the second subissue of their only issue, Appellants argue that the trial court abused its discretion by entering the temporary injunction because it destroys the status quo and provides Appellees with the ultimate object of the suit. Appellants contend that prior to Appellees' demand for data and information, Lifeguard had never provided Appellees with access to credit card

---

[5] ... Nor do Appellees argue or point to any evidence that in terms of their business relationship, CASA is so inextricably intertwined with DirectMed that CASA will be irreparably injured without the temporary injunction.

21

and bank account information regarding DirectMed members and non-contested CASA members or to any of the records relating to the "Contested CASA Members."

"Status quo is defined as 'the last, actual, peaceable, noncontested status which preceded the pending controversy.'" *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (quoting *Transp. Co. v. Robertson Transps., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553–54 (1953)). "If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists *after* the action." *Benavides ISD v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.).

It is undisputed that Lifeguard performs back-office support for DirectMed.[6] Bruggemann testified that Lifeguard's operations include a "fulfillment operation," customer service, an IT department, an account management department, a claims department, and "so on and so forth." The

___

[6] In a letter addressed to Bruggemann dated June 30, 2009, Smith acknowledged that "Lifeguard entered into Servicing Agreements with . . . DirectMed many years ago." In another letter addressed to Bruggemann dated June 30, 2009, Smith stated that there are areas of common interest in which Lifeguard may be helpful in providing the Minnesota Attorney General with materials, "[g]iven the Servicing Agreement in place between Lifeguard and DirectMed."

agreement between Lifeguard and DirectMed, which is still in effect, provides that part of Lifeguard's duties and responsibilities include providing access to products and services for health benefits and services to DirectMed's customers, providing toll-free 800 services for DirectMed's members to access providers, providing an internet website for members to locate provider and access web links, and providing DirectMed with fulfillment information required to support the benefits offered by Lifeguard to DirectMed. Lifeguard acknowledged DirectMed's exclusive rights to the names, addresses, and telephone numbers of its customers. During the hearing on Appellees' application for a temporary injunction, Bruggemann agreed that Lifeguard routinely provides social security numbers and credit card and bank information to its clients like DirectMed. The following exchange occurred:

> [Appellees' counsel]: And would you read the - - the second sentence of that e-mail, this file contains?
>
> [Bruggemann]: This file contains Social Security numbers, credit card and bank information, so it needs to be encrypted. As soon as we receive IAC's PGP key, we can transmit the data. The file will be - - is in the format that they provided us.
>
> [Appellees' counsel]: So Lifeguard would routinely send Social Security numbers, credit card and bank information to its - - its clients like DirectMed?
>
> [Bruggemann]: Yes.

23

Appellees thus presented some evidence supporting the trial court's order requiring Appellants to turn over DirectMed's customer credit card and bank information. We overrule this part of Appellants' second subissue.

We need not address Appellants' argument that the temporary injunction destroys the status quo and awards Appellees the ultimate relief they seek in the suit due to the injunction's requirement that Lifeguard turn over to a third party data and information relating to the "Contested CASA Members" because we have already determined above that the trial court abused its discretion by concluding that CASA will be irreparably harmed in the absence of a temporary injunction. Because CASA did not demonstrate irreparable harm, an essential element of injunctive relief, it is not entitled to a temporary injunction requiring Appellants to turn over data and information regarding its members, whether they are "Contested CASA Members" or non-contested CASA members.

We hold that the trial court's temporary injunction properly preserves the status quo pending resolution of the suit and does not award Appellees the ultimate relief they seek in the suit. We overrule Appellants' second subissue arguing to the contrary.

## VI. VAGUE, OVERLY BROAD, NOT SPECIFIC

In the third subissue of their only issue, Appellants argue that the order granting the temporary injunction is unenforceable because it is vague, overly broad, and not specific in its terms.

Rule of civil procedure 683 provides in relevant part that every order granting an injunction shall set forth the reasons for its issuance, shall be specific in terms, and shall describe in reasonable detail and not by reference to the complaint or other document the act or acts sought to be restrained. Tex. R. Civ. P. 683. The requirements of rule 683 are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved. *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986); *see Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000).

### A. Paragraphs 6, 7, & 8

Appellants argue that the injunction is unenforceable because its paragraphs 6, 7, and 8 are vague and overly broad. Paragraphs 6, 7, and 8 concern only the third-party vendor's handling of the "Contested CASA Members'" data and information. As with Appellants' status quo argument regarding "Contested CASA Members," we need not address this argument

25

because CASA failed to demonstrate irreparable harm, negating its entitlement to injunctive relief.

B. "Unfettered"

Appellants argue that the order is unenforceable because the term "unfettered" as used in the injunction's paragraph 1 is vague and overly broad. They contend that they are or have been in possession of DirectMed and CASA records that are *not* in electronic form and that "[i]f read literally, 'unfettered' access would enable Appellees to demand to see the records at any time of day or night, on weekends and holidays, and as often as they wish." We disagree. Paragraph 1 enjoins Appellants from denying Appellees unfettered access to "all data, information and records, regarding DirectMed and CASA members, excluding 'Contested CASA Members.'" Paragraph 2 determines how the "data, information and records" will be transferred—it requires that Appellants transfer the data and information to Appellees via a hard drive device. Paragraph 4 requires Appellants to update daily the data transferred pursuant to paragraph 2 using an SFTP site. The injunction thus requires the transfer of data, information, and records through electronic means only. Appellants' argument speculating about how data that is not in electronic form will be transferred is irrelevant to whether the order is enforceable because no part of the injunction requires the transfer of data in a form other than electronic.

26

Appellees' argument is also unpersuasive because it examines the term "unfettered" in a vacuum and not in light of the evidence presented at the injunction hearing. Appellees filed this lawsuit primarily because they requested access to *all* of the DirectMed and CASA data and records under the control of Lifeguard and Amacore but were provided with only *part* (approximately 20%, according to Williams) of that data and information. The trial court's use of the term "unfettered" is unambiguously intended to prohibit Lifeguard from cherry-picking what data and information it turns over to Appellees. We hold that the trial court's use of the term "unfettered" is not vague and overly broad, and we overrule this part of Appellants' third subissue.

C.    Amacore

Appellants argue that the injunction is unenforceable as to Amacore because there is no evidence that Amacore has possession of any of the data and information that the order requires be turned over. We agree.[7] Amacore is Lifeguard's parent company. It is undisputed that Lifeguard is in possession of Appellees' data and information because of agreements that it, not Amacore,

---

[7] Appellees' response that Appellants failed to preserve this argument for appellate review by not asserting it at the trial court level is without merit. *See Big D Props., Inc. v. Foster*, 2 S.W.3d 21, 23 (Tex. App.—Fort Worth 1999, no pet.) ("We . . . hold that rule 683's requirements may not be waived."); *see also Kaufmann v. Morales*, 93 S.W.3d 650, 655 n.2 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (same).

has with Appellees. According to Williams, the data and information that Appellees seek is retained in the L.I.S.A. system. Bruggemann testified that "if you have full access to the LISA system you can see every aspect, every - - every ounce of information that's been collected on - - on each member for - - under each plan, under each group, and under each client." According to Bruggemann, L.I.S.A is maintained by Lifeguard. Bruggemann testified that Amacore owns a call center that sells DirectMed's products, but there is no evidence that Amacore has possession of any of the data that Appellees seek. We sustain this part of Appellants' third subissue.

D. Date Limitation

Appellants argue that the temporary injunction order is overly broad because it does not contain a date limitation consistent with the CID request for information. They contend that the primary reason for the relief granted by the injunction order was so that Appellees could properly respond to the CID; that the CID requires information and documents from July 1, 2003, to the present; and that Appellees did not present any evidence of the need for information and documents prior to July 1, 2003.

The CID does not limit the information and documents that DirectMed may produce from July 1, 2003, to the present. Rather, it also states, "If it is necessary to refer to *a prior time to fully answer an interrogatory or respond to*

28

*a request for production of documents*, YOU should do so." [Emphasis added.] Because the CID permits DirectMed to produce information and documents from before July 1, 2003, in order to fully respond to its demands, the trial court did not abuse its discretion by not including in its order a date limitation of July 1, 2003. We overrule this part of Appellants' third subissue.

## VII. MOTION TO STRIKE AFFIDAVIT

Appellants filed a motion to strike the affidavit of Robert T. Trautmann, an attorney who works with an attorney representing Appellees. The affidavit, which is dated September 21, 2009, and is attached to Appellees' brief as part of the appendix, purports to relate information regarding the Minnesota Attorney General's ongoing investigation of DirectMed. "It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted." *Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) (citing *Univ. of Tex. v. Morris*, 162 Tex. 60, 64, 344 S.W.2d 426, 429 (reasoning that appellate court's "action must be controlled by the record made in the trial court at the time the injunction was issued"), *cert. denied*, 366 U.S. 9 (1961))). Trautmann's affidavit was not part of the evidence adduced by either party at the hearing on Appellees' application for a temporary injunction and was not considered by the trial court in entering the temporary injunction order, which

29

was signed on August 3, 2009. We grant Appellants' motion to strike Robert T. Trautmann's affidavit.

## VIII. CONCLUSION

Having (1) sustained part of Appellants' first subissue complaining that CASA failed to demonstrate irreparable injury, (2) sustained part of Appellants' third subissue complaining that there is no evidence that Amacore has possession of the data and information sought by Appellees, and (3) overruled the remainder of Appellants' subissues and arguments, we modify the trial court's findings and rulings set forth on pages one through two of the order as follows:

> Unless Defendant Lifeguard Benefit Services, Inc. (Lifeguard) is immediately enjoined, Plaintiff Direct Medical Network Solutions, Inc. (DirectMed) will suffer immediate and irreparable injury and extreme hardship for which there is no adequate remedy at law. In part, the Court finds that absent a temporary injunction, (1) Plaintiff DirectMed will be denied possession of the data, information, and records regarding DirectMed members to which they have the right of possession; (2) Plaintiff DirectMed will not be able to properly respond to the Minnesota Attorney General's Civil Investigative Demand or other investigations; (3) Plaintiff DirectMed will not be able to properly prepare and defend itself in connection with such investigations; (4) Plaintiff DirectMed's failure to prepare and respond adequately to any investigations or actions by Defendant Lifeguard would create grounds for further action against it, could affect the nature of the investigation, potentially expose Plaintiff DirectMed and/or its officers to charges being initiated, and impact their goodwill, business, client relationships, reputation in the business community, and ability to compete on a level playing field in the industry; (5) any charges arising from the

30

failure to respond to any investigation or complaint would cause Plaintiff DirectMed immediate irreparable harm and damage through the loss of customers, damage to its relationships with clients, benefits providers, vendors, loss of goodwill, and the permanent injury to Plaintiff DirectMed's business reputation; (6) failing to have possession of the data, information, and records concerning all of its customers' and members' records would injure Plaintiff DirectMed's ability to service and direct service of those customers and members and their benefits and to investigate and evaluate the services being provided to those customers and members.

We modify paragraph 1 of the temporary injunction order to read as follows:

That Defendant Lifeguard is hereby enjoined from denying Plaintiff DirectMed and its agents, employees, and/or contractors from having immediate possession of and unfettered access to all data, information, and records regarding DirectMed members.

We modify paragraph 2 to read as follows:

Defendant Lifeguard shall, on or before 5:00 P.M. on the tenth day after the Supreme Court of Texas dissolves or lifts the stay entered on September 14, 2009, in Cause No. 09-0768, transfer an external hard drive device to be provided by Plaintiff DirectMed, and to deliver to Plaintiff DirectMed all data, information, and records, including but not limited to credit card and bank information regarding DirectMed members, in the record layout format attached to the trial court's Order as Appendix A.

We modify paragraph 4 to read as follows:

Defendant Lifeguard shall update the transfers referred to in Paragraph 2 hereof on a daily basis by use of an SFTP site designated by Plaintiff DirectMed.

We modify paragraph 10 to read as follows:

Defendant Lifeguard, shall within twenty-four hours of receipt of any inquiry, investigative demand, or like communication received

31

by Defendant Lifeguard regarding Plaintiff DirectMed, its members, or any plan offered by Plaintiff DirectMed, forward the same to Plaintiff DirectMed.

We modify paragraph 11 to read as follows:

Defendant Lifeguard shall be enjoined from engaging in any responses or communications with the Minnesota Attorney General or any other investigative unit purportedly on Plaintiff DirectMed's behalf.

We further modify the temporary injunction order to delete paragraphs 3, 5, 6, 7, 8, and 9, as those paragraphs are only relevant to the transfer of data and information relating to the "Contested CASA Members." We affirm the temporary injunction as modified.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, WALKER, and MEIER, JJ.

DELIVERED:  February 11, 2010

32