

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00210-CV

| | | |
|---|---|---|
| Tejas Fun, L.P. | § | From the 16th District Court |
| | § | of Denton County (2011-11020-16) |
| v. | § | January 17, 2013 |
| Just for Fun Grapevine, Inc., John Lemley, and Laura Lemley | § | Opinion by Justice Gabriel |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's ruling on the temporary injunction. The temporary injunction is modified to remove the handwritten language allowing Just For Fun to enter Tejas's property for the purposes of removing the boats. It is ordered that the temporary injunction of the trial court is affirmed as modified.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Lee Gabriel



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-12-00210-CV**
**NO. 02-12-00234-CV**

TEJAS FUN, L.P.                                                                    APPELLANT

V.

JUST FOR FUN GRAPEVINE, INC.,                                         APPELLEES
JOHN LEMLEY, AND LAURA
LEMLEY

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Tejas Fun, L.P. appeals the trial court's order granting a temporary injunction against it and the trial court's order granting emergency relief to appellee Just For Fun Grapevine, Inc.   We modify the temporary

---

[1]*See* Tex. R. App. P. 47.4.

injunction and affirm it as modified, and dismiss Tejas's appeal regarding the emergency relief order.

## Background Facts

Just For Fun was incorporated in 2003. Peter J. Clark was a 67% shareholder, and John Lemley was a 33% shareholder of the corporation. Lemley then built two dinner boats, and the titles to both boats were held by Just For Fun.

In 2004, Clark, as the majority shareholder of Just For Fun, agreed to contribute the two boats to Tejas. In exchange, Tejas would grant a 20% ownership interest in Tejas to Just For Fun. Tejas and Just For Fun entered into a lease agreement in which Tejas rented the two boats back to Just For Fun. The lease stated,

> Title to the Dinner Boats shall remain with [Tejas] at all times, and the Dinner Boats shall at all times be and remain the sole and exclusive personal property of [Tejas]. [Just For Fun] shall have no right, title[,] or other interest therein, except the right to use the Dinner Boats in the normal operation of the party and dinner boat rental business of [Just For Fun] at the Location . . . .

The "Location" was defined in the agreement as Silver Lake Marina on Lake Grapevine.

In February 2008, John Lemley and his wife, Laura Lemley, purchased Clark's interest in Just For Fun. From 2008 to 2010, John signed a series of identical lease renewal agreements, renewing the lease agreement for the boats.

3

The renewal agreement stated, "[Just For Fun] warrants that [it] has accepted and is now in possession of the demised premises . . . ."

The Lemleys claimed that in early 2008, they discovered that the 20% ownership in Tejas was held in Clark's name individually, not Just For Fun's name. The Lemleys also claimed that they were unaware until October 2011 that Clark had never paid Just For Fun for the dinner boats he had contributed to Tejas. Because of disputes over what was owed under the lease, the lease ended in November 2011.

After the lease ended, Tejas claimed it discovered that the title to the two boats had not been properly transferred to Tejas but instead remained in Just For Fun's name. Tejas filed this suit after Just For Fun refused to deliver the boats' titles to Tejas. Tejas sought "specific performance of the terms of the written agreements in effect and the forced delivery by [Just For Fun] of clear and clean titles to the two vessels[] to [Tejas]."

The Lemleys and Just For Fun countersued for breach of contract, tortious interference with business relationships, conversion, unjust enrichment, and fraud. Just For Fun also sought a declaration of the rights of the parties under the lease and the ownership of the boats. It also sought a temporary restraining order and injunction. Specifically, it requested that Tejas be enjoined from

> a) Selling, transferring, encumbering, moving, contracting, using, exhibiting, advertising, promoting, damaging, disassembling, tampering with, destroying, sabotaging, transporting[,] or operating the Dinner Boats;

4

b) Destroying, spoilating, removing, hiding, secreting any documents, evidence, records, email, fax, computer data in whole or in part related to the financial transaction(s) associated with the business relationship between [Just For Fun] and Tejas related to the Dinner Boats and the Lease, including but not limited to, invoices, bills of sale, purchase orders, wire transfers, checks, deposits, bank statements, lines of credit, loans[,] and loan payments;

c) Interfering in any business relationships that [Just For Fun] ha[s] now or may enter in the future with regard to using the Dinner Boats.

On May 18, 2012, the trial court granted the temporary injunction, enjoining Tejas from the precise acts that Just For Fun requested in its motion. The injunction also included a handwritten addition stating "except that [Just For Fun] may enter [Tejas's] property for the sole purpose of obtaining possession of the Dinner Boats."

On May 24, 2012, the trial court held a hearing on a request for clarification of the temporary injunction. The trial judge called Tejas and left a voicemail message stating, "I have [Just For Fun] here before me, and [it] would, I think, like further clarification of the Order." The trial court gave Tejas ten minutes to return the phone call and stated that after that time it would proceed on the matter without it.

At the hearing, Just For Fun stated that it was seeking the use of certain boat ramps to launch the boats on Lake Lewisville and that Tejas was refusing to allow Just For Fun to use the ramps. After the hearing, the trial court entered an "Order on Just For Fun['s] Motion for Emergency Relief." The order stated that

5

Just For Fun had made a motion for emergency relief "requesting immediate access to the boat ramps . . . for the purpose of returning the Dinner Boats to Just For Fun Grapevine's possession."[2]  The order further stated it was "necessary and appropriate to enforce [the] Temporary Injunction."  It granted Just For Fun and the Lemleys "unobstructed access to and unobstructed use of any and all boat ramps, points of entry, roadways or other thoroughfares or property necessary for the launch, placement, and/or removal of the Dinner Boats" and required Tejas to cooperate with Just For Fun "to accomplish the peaceful and orderly placement or launch of the Dinner Boats on Lake Lewisville or their removal from Lake Grapevine."

Tejas filed an emergency motion to vacate the temporary injunction, which the trial court denied.  Tejas then filed a notice of appeal appealing the temporary injunction.[3]  It later filed a second notice of appeal appealing the order granting emergency relief.

## Standard of Review

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56,

---

[2]No motion for emergency relief is in the record before us.

[3]Appeals of temporary injunctions are accelerated interlocutory appeals. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2012); Tex. R. App. P. 28.1(a).

57 (Tex. 1993)). Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id.* A temporary injunction is an extraordinary remedy and will not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief. *Walling*, 863 S.W.2d at 58; *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 130 S. Ct. 2061 (2010). Whether to grant or deny a request for a temporary injunction is within the trial court's discretion, and we will not reverse its decision absent an abuse of discretion. *Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot*, 281 S.W.3d at 220. Accordingly, when reviewing such a decision, we must view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion. *Frequent Flyer Depot*, 281 S.W.3d at 220. A trial court does not abuse its discretion if it bases its decision on conflicting evidence and at least some evidence in the record reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Frequent Flyer Depot*, 281 S.W.3d at 220. A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the

7

law to the established facts.  *See State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975).

## Discussion

In its first issue, Tejas argues that the trial court abused its discretion by granting the temporary injunction.  As stated above, a temporary injunction's aim is to preserve the status quo of the litigation's subject matter.  *Butnaru*, 84 S.W.3d at 204.  Status quo is "the last, actual, peaceable, noncontested status [that] preceded the pending controversy."  *Lifeguard Benefit Servs., Inc. v. Direct Med. Network Solutions, Inc.*, 308 S.W.3d 102, 114 (Tex. App.—Fort Worth 2010, no pet.) (quoting *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.)).

Prior to the present litigation, the parties agreed to the possession and ownership of the boats through the lease agreements.  The renewal agreements clearly state that "[Just For Fun] . . . has accepted and is now in possession of the [boats]."  However, the lease also limits Just For Fun's rights to the boats to "the right to use [them] in the normal operation of the party and dinner boat rental business of [Just For Fun] at the Location . . . ."  The "Location" is specifically described as Silver Lake Marina on Lake Grapevine.  There was no evidence presented that Just For Fun had ever removed the boats from Lake Grapevine until litigation had begun.  Thus, Just For Fun's removal of the boats from Lake Grapevine was not the last, actual, peaceable, noncontested status of the boats that preceded the litigation.  The trial court's addition of the language allowing

8

Just For Fun to enter Tejas's property to "obtain possession" of the boats therefore did not maintain, but disrupted, the status quo.

Further, the additional language granted relief that Just For Fun had not requested. A trial court may not grant relief in the absence of pleadings supporting such relief. *Vaughn v. Drennon*, 202 S.W.3d 308, 314 (Tex. App.— Tyler 2006, no pet.); *see* Tex. R. Civ. P. 301 (requiring the judgment of the court to conform to the pleadings). Just For Fun requested only that Tejas be enjoined from

> a) Selling, transferring, encumbering, moving, contracting, using, exhibiting, advertising, promoting, damaging, disassembling, tampering with, destroying, sabotaging, transporting[,] or operating the Dinner Boats;

> b) Destroying, spoilating, removing, hiding, secreting any documents, evidence, records, email, fax, computer data in whole or in part related to the financial transaction(s) associated with the business relationship between [Just For Fun] and Tejas related to the Dinner Boats and the Lease, including but not limited to, invoices, bills of sale, purchase orders, wire transfers, checks, deposits, bank statements, lines of credit, loans[,] and loan payments;

> c) Interfering in any business relationships that [Just For Fun] ha[s] now or may enter in the future with regard to using the Dinner Boats.

The temporary injunction granted all the requested relief, but the handwritten language went beyond what was requested. The trial court thus abused its discretion. *See Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 385 (Tex. App.—Dallas 2009, no pet.) (holding that "the trial court clearly abused its discretion to the extent it granted relief exceeding the scope of the pleadings").

9

We affirm Tejas's first issue to the extent that it complains of the trial court's additional language. Because the trial court's order granting emergency relief sought to clarify the handwritten addition of the temporary injunction, and because we hold that the trial court erred in entering the additional language, we do not need to address Tejas's second issue. *See* Tex. R. App. P. 47.1.

## Conclusion

Having affirmed in part Tejas's dispositive issue, we modify the temporary injunction to remove the handwritten language allowing Just For Fun to enter Tejas's property for the purposes of removing the boats. We affirm the temporary injunction as modified. We dismiss as moot Tejas's appeal regarding the emergency relief order, which clarified the removed language.

LEE GABRIEL
JUSTICE

PANEL: WALKER, MCCOY, and GABRIEL, JJ.

DELIVERED: January 17, 2013

10