02-12-210 & 234-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00234-CV

 

 


 
 
 Tejas
 Fun, L.P.
  
  
  
 v.
  
  
 Just
 for Fun Grapevine, Inc., John Lemley, and Laura Lemley
 
 
 §
  
  
 §
  
 §
  
  
 §
  
  
 
 
 From the 16th District Court
  
  
 of
 Denton County (2011-11020-16)
  
 January
 17, 2013
  
  
 Opinion
 by Justice Gabriel
 
 


JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that the
appeal should be dismissed.  It is ordered that the appeal is dismissed as
moot.

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Lee Gabriel

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00210-CV

NO. 02-12-00234-CV

 

 


 
 
 Tejas Fun, L.P.
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 Just for Fun Grapevine, Inc., John Lemley, and
 Laura Lemley
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 16th
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          Appellant
Tejas Fun, L.P. appeals the trial court’s order granting a temporary injunction
against it and the trial court’s order granting emergency relief to appellee
Just For Fun Grapevine, Inc.  We modify the temporary injunction and affirm it
as modified, and dismiss Tejas’s appeal regarding the emergency relief order.

Background
Facts

          Just
For Fun was incorporated in 2003.  Peter J. Clark was a 67% shareholder, and
John Lemley was a 33% shareholder of the corporation.  Lemley then built two
dinner boats, and the titles to both boats were held by Just For Fun.

          In
2004, Clark, as the majority shareholder of Just For Fun, agreed to contribute
the two boats to Tejas.  In exchange, Tejas would grant a 20% ownership
interest in Tejas to Just For Fun.  Tejas and Just For Fun entered into a lease
agreement in which Tejas rented the two boats back to Just For Fun.  The lease
stated,

Title to the Dinner Boats shall remain with [Tejas] at
all times, and the Dinner Boats shall at all times be and remain the sole and
exclusive personal property of [Tejas].  [Just For Fun] shall have no right,
title[,] or other interest therein, except the right to use the Dinner Boats in
the normal operation of the party and dinner boat rental business of [Just For
Fun] at the Location . . . .

The
“Location” was defined in the agreement as Silver Lake Marina on Lake Grapevine.

          In
February 2008, John Lemley and his wife, Laura Lemley, purchased Clark’s
interest in Just For Fun.  From 2008 to 2010, John signed a series of identical
lease renewal agreements, renewing the lease agreement for the boats.  The
renewal agreement stated, “[Just For Fun] warrants that [it] has accepted and
is now in possession of the demised premises . . . .”

          The
Lemleys claimed that in early 2008, they discovered that the 20% ownership in
Tejas was held in Clark’s name individually, not Just For Fun’s name.  The
Lemleys also claimed that they were unaware until October 2011 that Clark had
never paid Just For Fun for the dinner boats he had contributed to Tejas.  Because
of disputes over what was owed under the lease, the lease ended in November
2011.

After
the lease ended, Tejas claimed it discovered that the title to the two boats
had not been properly transferred to Tejas but instead remained in Just For Fun’s
name.  Tejas filed this suit after Just For Fun refused to deliver the boats’
titles to Tejas.  Tejas sought “specific performance of the terms of the
written agreements in effect and the forced delivery by [Just For Fun] of clear
and clean titles to the two vessels[] to [Tejas].”

The
Lemleys and Just For Fun countersued for breach of contract, tortious
interference with business relationships, conversion, unjust enrichment, and
fraud.  Just For Fun also sought a declaration of the rights of the parties
under the lease and the ownership of the boats. It also sought a temporary
restraining order and injunction.  Specifically, it requested that Tejas be
enjoined from

a) Selling,
transferring, encumbering, moving, contracting, using, exhibiting, advertising,
promoting, damaging, disassembling, tampering with, destroying, sabotaging,
transporting[,] or operating the Dinner Boats;

 

b) Destroying,
spoilating, removing, hiding, secreting any documents, evidence, records,
email, fax, computer data in whole or in part related to the financial
transaction(s) associated with the business relationship between [Just For Fun]
and Tejas related to the Dinner Boats and the Lease, including but not limited
to, invoices, bills of sale, purchase orders, wire transfers, checks, deposits,
bank statements, lines of credit, loans[,] and loan payments;

 

c) Interfering in any business
relationships that [Just For Fun] ha[s] now or may enter in the future with
regard to using the Dinner Boats.

On
May 18, 2012, the trial court granted the temporary injunction, enjoining Tejas
from the precise acts that Just For Fun requested in its motion.  The
injunction also included a handwritten addition stating “except that [Just For
Fun] may enter [Tejas’s] property for the sole purpose of obtaining possession
of the Dinner Boats.”

On
May 24, 2012, the trial court held a hearing on a request for clarification of the
temporary injunction.  The trial judge called Tejas and left a voicemail
message stating, “I have [Just For Fun] here before me, and [it] would, I
think, like further clarification of the Order.”  The trial court gave Tejas
ten minutes to return the phone call and stated that after that time it would
proceed on the matter without it.

At the
hearing, Just For Fun stated that it was seeking the use of certain boat ramps
to launch the boats on Lake Lewisville and that Tejas was refusing to allow
Just For Fun to use the ramps.  After the hearing, the trial court entered an
“Order on Just For Fun[’s] Motion for Emergency Relief.”  The order stated that
Just For Fun had made a motion for emergency relief “requesting immediate
access to the boat ramps . . . for the purpose of returning the Dinner Boats to
Just For Fun Grapevine’s possession.”[2]  The order further stated
it was “necessary and appropriate to enforce [the] Temporary Injunction.”  It
granted Just For Fun and the Lemleys “unobstructed access to and unobstructed
use of any and all boat ramps, points of entry, roadways or other thoroughfares
or property necessary for the launch, placement, and/or removal of the Dinner
Boats” and required Tejas to cooperate with Just For Fun “to accomplish the
peaceful and orderly placement or launch of the Dinner Boats on Lake Lewisville
or their removal from Lake Grapevine.”

Tejas
filed an emergency motion to vacate the temporary injunction, which the trial
court denied.  Tejas then filed a notice of appeal appealing the temporary
injunction.[3]  It later filed a second
notice of appeal appealing the order granting emergency relief.

Standard
of Review

A
temporary injunction’s purpose is to preserve the status quo of the
litigation’s subject matter pending a trial on the merits.  Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 204 (Tex. 2002) (citing Walling v. Metcalfe,
863 S.W.2d 56, 57 (Tex. 1993)).  Whether to grant or deny a temporary
injunction is within the trial court’s sound discretion.  Id. 
A temporary injunction is an
extraordinary remedy and will not issue as a matter of right.  Id.
 To obtain a temporary injunction, an
applicant must plead and prove (1) a cause of action against the
defendant; (2) a probable right to the relief sought; and (3) a
probable, imminent, and irreparable injury in the interim.  Id.

In
an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of
the order granting or denying relief.  Walling, 863 S.W.2d at 58; Frequent
Flyer Depot, Inc. v. Am. Airlines, Inc., 281 S.W.3d 215, 220 (Tex.
App.––Fort Worth 2009, pet. denied), cert. denied, 130 S. Ct. 2061
(2010).  Whether to grant or deny a request for a temporary injunction is within the trial court’s discretion, and we will
not reverse its decision absent an abuse of discretion.  Butnaru, 84
S.W.3d at 204; Frequent Flyer Depot, 281 S.W.3d at 220.  Accordingly,
when reviewing such a decision, we must view the evidence in the light most
favorable to the trial court’s order, indulging every reasonable inference in
its favor, and determine whether the order was so arbitrary that it exceeds the
bounds of reasonable discretion.  Frequent Flyer Depot, 281 S.W.3d at
220.  A trial court does not abuse its discretion if it bases its decision on
conflicting evidence and at least some evidence in the record reasonably
supports the trial court’s decision.  Davis v. Huey, 571 S.W.2d 859, 862
(Tex. 1978); Frequent Flyer Depot, 281 S.W.3d at 220.  A trial court
abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts.  See
State v. Sw. Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).

Discussion

          In
its first issue, Tejas argues that the trial court abused its discretion by
granting the temporary injunction.  As stated above, a temporary injunction’s aim
is to preserve the status quo of the litigation’s subject matter.  Butnaru,
84 S.W.3d at 204.  Status quo is “the last, actual, peaceable, noncontested status
[that] preceded the pending controversy.”  Lifeguard Benefit Servs., Inc. v.
Direct Med. Network Solutions, Inc., 308 S.W.3d 102, 114 (Tex. App.—Fort
Worth 2010, no pet.) (quoting Universal Health Servs., Inc. v. Thompson,
24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.)).

          Prior
to the present litigation, the parties agreed to the possession and ownership
of the boats through the lease agreements.  The renewal agreements clearly
state that “[Just For Fun] . . . has accepted and is now in possession of the
[boats].”  However, the lease also limits Just For Fun’s rights to the boats to
“the right to use [them] in the normal operation of the party and dinner boat
rental business of [Just For Fun] at the Location . . . .”  The “Location” is
specifically described as Silver Lake Marina on Lake Grapevine.  There was no
evidence presented that Just For Fun had ever removed the boats from Lake
Grapevine until litigation had begun.  Thus, Just For Fun’s removal of the
boats from Lake Grapevine was not the last, actual, peaceable, noncontested status
of the boats that preceded the litigation.  The trial court’s addition of the
language allowing Just For Fun to enter Tejas’s property to “obtain possession”
of the boats therefore did not maintain, but disrupted, the status quo.

Further,
the additional language granted relief that Just For Fun had not requested.  A
trial court may not grant relief in the absence of pleadings supporting such
relief.  Vaughn v. Drennon, 202 S.W.3d 308, 314 (Tex. App.—Tyler 2006,
no pet.); see Tex. R. Civ. P. 301 (requiring the judgment of the court
to conform to the pleadings).  Just For Fun requested only that Tejas be
enjoined from

a) Selling,
transferring, encumbering, moving, contracting, using, exhibiting, advertising,
promoting, damaging, disassembling, tampering with, destroying, sabotaging,
transporting[,] or operating the Dinner Boats;

 

b) Destroying, spoilating,
removing, hiding, secreting any documents, evidence, records, email, fax,
computer data in whole or in part related to the financial transaction(s)
associated with the business relationship between [Just For Fun] and Tejas
related to the Dinner Boats and the Lease, including but not limited to,
invoices, bills of sale, purchase orders, wire transfers, checks, deposits,
bank statements, lines of credit, loans[,] and loan payments;

 

c) Interfering in any business
relationships that [Just For Fun] ha[s] now or may enter in the future with
regard to using the Dinner Boats.

The
temporary injunction granted all the requested relief, but the handwritten
language went beyond what was requested.  The trial court thus abused its
discretion.  See Webb v. Glenbrook Owners Ass’n, Inc., 298 S.W.3d 374,
385 (Tex. App.—Dallas 2009, no pet.) (holding that “the trial court clearly
abused its discretion to the extent it granted relief exceeding the scope of
the pleadings”).  We affirm Tejas’s first issue to the extent that it complains
of the trial court’s additional language.  Because the trial court’s order
granting emergency relief sought to clarify the handwritten addition of the
temporary injunction, and because we hold that the trial court erred in
entering the additional language, we do not need to address Tejas’s second
issue.  See Tex. R. App. P. 47.1.

Conclusion

          Having
affirmed in part Tejas’s dispositive issue, we modify the temporary injunction
to remove the handwritten language allowing Just For Fun to enter Tejas’s
property for the purposes of removing the boats.  We affirm the temporary
injunction as modified.  We dismiss as moot Tejas’s appeal regarding the
emergency relief order, which clarified the removed language.  

 

 

LEE GABRIEL
JUSTICE

 

PANEL:  WALKER,
MCCOY, and GABRIEL, JJ.

DELIVERED:  January 17, 2013








 









[1]See Tex. R. App. P. 47.4.





[2]No motion for emergency relief is in the record before us.





[3]Appeals of temporary injunctions are accelerated interlocutory
appeals.  See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West
Supp. 2012); Tex. R. App. P. 28.1(a).