INTERCONTINENTAL TERMINALS
COMPANY, LLC, Appellant,

v.

VOPAK NORTH AMERICA, INC., Vopak Terminal Deer Park, Inc., and Port Terminal Railroad Association, Appellees.

No. 01–11–00323–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 22, 2011.

Chris Lacy, Sean Gorman, Dewey & LeBoeuf LLP, Ruth Edry Salek, Houston, TX, for Appellant.

A. Randall Friday, Crady, Jewett & McCulley, Glenn A. Ballard Jr., Jeffrey L. Oldham, Phillip L. Sampson Jr., Bracewell & Giuliani L.L.P., Houston, TX, for Appellees.

Panel consists of Justices JENNINGS, BROWN, and HUDDLE.

## OPINION

HARVEY BROWN, Justice.

Intercontinental Terminals Company LLC (ITC) appeals from a temporary injunction in favor of Vopak North America, Inc. and Vopak Terminal Deer Park, Inc. (collectively, Vopak), which allows Vopak certain use of ITC's railroad track during the pendency of this litigation. ITC challenges the trial court's temporary injunction on the grounds that it impermissibly alters the status quo and is not supported by evidence of two elements essential to temporary injunctive relief: probable, imminent, and irreparable harm and a probable right to recover. We conclude that the trial court did not abuse its discretion in determining that its order was necessary to preserve the status quo and that the order is supported by evidence of probable, imminent, and irreparable harm and a probable right to recover. We therefore affirm the trial court's temporary injunction order.

## Background

ITC and Vopak are neighbors and competitors.[1] These two storage and transport businesses each have a location in Deer Park, Texas, alongside the Houston ship channel. The land on which they are located was once a single property owned by Union Equity Cooperative Exchange, Inc. In 1972, Union Equity sold a parcel of its land to Robertson Land Company. At the time of the sale, Union Equity and Robertson Land entered into a "lead trackage agreement." Under this agreement, Union Equity granted Robertson Land a right to use its railway track, track 805, which traverses Union's land and connects to the Port Terminal Railway Association's (PTRA) main rail line. In exchange, Robertson Land agreed to share in track 805's maintenance costs, proportionate to its track usage.[2]

Vopak now owns the land sold to Robertson Land and uses track 805 as Robertson Land's successor under the lead trackage agreement. ITC owns the land on which track 805 is located and is Union Equity's successor under the agreement. Railway transportation is an important part of both ITC's and Vopak's storage and transport businesses. Track 805 is their only rail access to the PTRA's main line. Much of this litigation centers on the following language in the agreement: "Any movement of [Vopak's] cars over [ITC's] track shall be subject to the control of [ITC] so as not to interfere with [ITC's] use thereof."

During the past decade, ITC, Vopak, and a third party, Clear Harbors, have shared use of track 805. The number of railcars inbound or outbound to ITC or Vopak varied widely on a day-to-day basis. For example, over a four day period in 2009, Vopak received zero railcars the first

---

1. ITC states that it is in the petrochemical storage and transfer business. Vopak states that it provides storage and transport services for bulk liquid chemicals and commodities.

2. Union also granted Robertson an easement for the construction of a spur track to connect track 805 to Robertson's property.

day, fifty-five railcars the next day, ten railcars the third day, and fifty-seven railcars the fourth day. Every year for the past three years, Vopak has received seventy railcars or more in a single day and has also received zero railcars on some days. Vopak has received in excess of 100 railcars in a single day in the past. Vopak has invested more than $72 million in rail-related infrastructure.

Historically, ITC and Vopak transported their materials via manifest trains, which are generally made up of railcars holding different types of product from multiple customers. In 2010, Vopak anticipated an increased demand for storage of ethanol and implemented a business plan that would allow it to receive ethanol via unit trains. Unit trains are considerably longer than manifest trains and generally transport only a single product from a single customer. This new delivery method was likely to result in an increase in the number of cars delivered to Vopak over track 805. After learning of Vopak's intentions, ITC attempted to limit Vopak's use of track 805 to a maximum of thirty-five railcars per day going into Vopak's facility and thirty-five railcars per day going out. In May 2010, ITC communicated this limit to the PTRA, which handles rail deliveries to ITC's and Vopak's Deer Park locations. In June 2010, ITC informed Vopak of its intended limitation on Vopak's use of the track. Vopak disputed ITC's right to impose the proposed limit on Vopak's track use.

The PTRA was reluctant to take a side in the dispute, and in early-October 2010, it filed a petition seeking a declaration of ITC's and Vopak's rights relating to track 805. Vopak filed a cross-action and sought to enjoin ITC from restricting or interfering with its use of track 805, both during the pendency of the litigation and permanently. After several evidentiary hearings,[3] the trial court entered a temporary injunction order enjoining ITC from restricting Vopak's use of the track to less than seventy cars per day into Vopak's facility and seventy cars per day out of Vopak's facility. That injunction is the subject of this interlocutory appeal.

## Standards for Granting and Reviewing Temporary Injunction

 A temporary injunction is an extraordinary remedy, the purpose of which is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). To obtain a temporary injunction, an applicant must show: (1) a cause of action, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.; Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex.App.-Houston [1st Dist.] 2011, no pet.). The temporary injunction applicant bears the burden of production—i.e., it must offer some evidence of each of these elements. *See In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex.2002) (quoting *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (1961); *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 897 (Tex.App.-Dallas 2006, no pet.).

 The decision to grant or deny an injunction rests within the trial court's

---

**3.** After a hearing on October 27, 2010, the trial court denied Vopak's initial request for temporary injunction. On December 2, 2010, the trial court entered a temporary restraining order against ITC. On December 13, 2010, the trial court held a second hearing.

On March 31, 2011, the trial court entered a second temporary restraining order. The trial court held a third evidentiary hearing on April 13, 2011, and entered the temporary injunction at issue in this appeal on April 20, 2011.

sound discretion. *Butnaru*, 84 S.W.3d at 204. We will reverse the trial court's ruling only if it has abused that discretion. *Id.* A trial court abuses its discretion only if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex.2010). We may not substitute our judgment for the trial judge's. *New Process Steel Corp. v. Steel Corp. of Tex.*, 638 S.W.2d 522, 524 (Tex. App.-Houston [1st Dist.] 1982, no writ). We view the evidence submitted to the trial court in the light most favorable to the court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *CRC–Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex.App.-Houston [1st Dist.] 1996, no pet.). Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978).

### Temporary Injunction

#### A. The trial court's temporary injunction preserves the status quo

■ ITC contends that the only permissible use of a temporary injunction is to preserve the status quo but that the trial court's temporary injunction changes, rather than preserves, the status quo. According to ITC, the circumstances that existed in June 2010 establish the status quo. ITC points out that under the injunction's seventy-railcars-per-day limit, Vopak could receive as many as 2,100 railcars each month. By comparison, ITC asserts, Vopak received an average of 692 railcars per month from January to June 2010 and has not received more than 1,000 railcars in any single month over the last seven years.

Vopak rejects ITC's framing of the status quo, contending that the status quo is instead established by the circumstances that have existed over the parties' forty-year relationship. Vopak asserts that ITC has never before placed any pre-determined limitation on the number of railcars inbound or outbound to Vopak and that Vopak has often received seventy or more railcars in a single day. Thus, Vopak contends that any alteration of the status quo in the injunction favors ITC by placing a limit on the number of cars Vopak may receive when no limit existed before this dispute.

■ In the injunction context, the status quo is "the last, actual, peaceable, non-contested status that preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex.2004). Here, we look to evidence of the parties' practices up until February 2010—before Vopak began implementing its new business plan and before ITC began attempting to enforce a pre-determined limitation on Vopak's use of the track—to determine the status quo. *See Lifeguard Benefit Servs., Inc. v. Direct Med. Network Solutions, Inc.*, 308 S.W.3d 102, 114 (Tex.App.-Fort Worth 2010, no pet.) (noting that, if one party takes action that alters relationship between parties, status quo is relationship that existed before action) (citing *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.-San Antonio 1984, writ ref'd n.r.e.). We consider the parties' historical use and operation of track 805 over the course of their relationship under the track usage agreement. *See Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 882 (Tex.App.-El Paso 2011, no pet. h.) (concluding that status quo was circumstances that existed between parties from 1992 to 2004, when dispute arose).

The evidence on the parties' historical use of track 805 demonstrates that the average number of railcars Vopak has transported into or out of its facility over track 805 on any given day is considerably less than seventy. But that number varied widely on a day-to-day basis and was sometimes well over seventy. The evidence also shows that ITC has never, before this dispute, attempted to place a predetermined limitation on the number of railcars Vopak transports over track 805 on a daily, monthly, or yearly basis. There is no evidence tending to demonstrate that that ITC's business operations will be disrupted if Vopak transports seventy railcars into or out of its facility over track 805 in a single day.

■ Generally, "whe[n] the applicant for temporary relief proves the probability of some easement right in the property of another, the status quo is the applicant's continued right to exercise such possession of the property as the easement right carries with it." *Getz v. Boston Sea Party of Houston, Inc.*, 573 S.W.2d 836, 838 (Tex. Civ.App.-Houston [1st Dist.] 1978, no writ); *see also AIMCO Props., L.P. v. Time Warner Entm't–Advanced/Newhouse P'ship*, No. 03–97–00340–CV, 1997 WL 590675 (Tex.App.-Austin Sept. 25, 1997, no pet.) (citing *Getz* for this proposition). The parties agree that Vopak has some easement right to the use of track 805. Their disagreement relates to the parameters of ITC's right to restrict Vopak's use of the track under the track usage agreement.

The trial court could have reasonably concluded that its seventy-railcars-per-day limit balanced the parties' competing interests in the status quo: Vopak's interest in operating its business free from new restrictions on its track usage and ITC's interest in preventing Vopak from expanding its track usage to a point that interferes with ITC's own operations. If Vopak wants to receive 100 railcars on one particular day, it will have to reallocate those deliveries to comply with the trial court's injunction, even though it has received more than 100 railcars in a single day in the past without incident. Correspondently, if Vopak transports the maximum number of railcars permitted under the injunction each day, Vopak's track usage under the injunction will far exceed its historical track usage. But the trial court was not required to presume that Vopak will abuse the injunctive relief granted. ITC is free to seek modification of the trial court's injunction if Vopak's use of the track under the injunction is so excessive as to interfere with ITC's own use of the track.

Under these circumstances, we hold that the trial court did not abuse its discretion in its efforts to preserve the status quo in its temporary injunction. *Butnaru*, 84 S.W.3d at 204.

## B. Vopak presented evidence of probable, imminent, and irreparable harm

■ ITC next contends that Vopak did not present evidence that it would suffer probable, imminent, and irreparable harm if the temporary injunction was not granted. ITC asserts that Vopak's evidence of harm is too dated to show imminent harm because most of its evidence was presented at the first temporary injunction hearing, which occurred over five months before the trial court granted the temporary injunction now on appeal. ITC also argues that Vopak could compensate for restrictions on its track usage by using other means of transportation into and out of its facility, and that Vopak's customer contracts do not prevent Vopak from using other means of transportation. ITC points out that Vopak did not prove that it actually lost any customers as a result of the restrictions ITC imposed on its track 805 usage. Finally, ITC argues that Vopak's

asserted harm is monetarily compensable and therefore not irreparable.

With respect to its first complaint, ITC cites no authority for its contention that a finding of imminent harm cannot be based on evidence from an earlier temporary injunction hearing. Evidence from more than five months earlier may be outdated but is not necessarily so. ITC does not identify any specific evidence from the trial court's earlier hearings that it contends was no longer accurate or applicable at the time of the trial court's temporary injunction order. Much of Vopak's evidence at the first hearing in October tended to show factual circumstances of an enduring nature. For example, Vopak presented evidence of the nature of its business and the "pivotal" role that rail transport plays in its integrated transportation operations. Absent a change in these facts, Vopak was not required to re-present this same evidence at the trial court's subsequent hearings.

It is true that, in many situations, harm that is imminent in October and December will no longer be imminent the following April—the threat having either been realized or passed. But the harm Vopak asserts here is of a continuing nature: interference with its ongoing business operations and the ramifications of the disruption caused by that interference. During the October 27, 2010 temporary injunction hearing, Vopak presented evidence that ITC's 35–railcars–per–day restriction on Vopak would result in a backlog of Vopak-bound railcars at the PTRA's facility, as well as evidence of the effects that backlog would have on Vopak's customer-relations. At the April 13, 2011 temporary injunction hearing, Vopak presented evidence that such backlogs had in fact occurred and were so severe that, a few weeks earlier, the PTRA had placed an embargo on Vopak, prohibiting Vopak from allowing its customers to send it deliveries by rail. Vopak submitted communications showing that the PTRA agreed to lift the embargo only after ITC agreed to allow delivery of up to seventy railcars per day to Vopak's facility. Vopak's evidence at the April 2011 hearing also included communications reflecting costs, delays, and customer complaints relating to ITC's restriction on Vopak's use of track 805.

Viewing the evidence in the light most favorable to the court's ruling and deferring to the trial court's resolution of conflicting evidence, see CRC–Evans Pipeline, 927 S.W.2d at 262, we hold that the trial court did not abuse its discretion in concluding that the harm to Vopak was imminent "because [ITC's] car restrictions are continuing and an embargo, one of which has already been entered preventing Vopak's customers from shipping cars to Vopak, will likely occur again."

ITC asserts that Vopak failed to present evidence that it was unable to compensate for restrictions on its track usage through use of other means of transportation, such as barges. Vopak, however, presented testimonial evidence that the various means of transportation used by Vopak to transport material into and out of its facility operate in conjunction with each other and are interdependent on each other such that when rail transport was interrupted, it had a "domino effect" in delays on the other means of transportation. Vopak also introduced evidence that the customer, rather than Vopak, typically dictates the means of transportation utilized to transport materials from the customer to Vopak's facility. Vopak's Gulf Coast General Manager specifically testified that Vopak could not fulfill its customer obligations by using barge transportation in the place of railway transportation. His testimony also indicated that the loss of railways as a

means of transportation would be devastating to Vopak's Deer Park operations, that not allowing customers the option of delivery by railway would be detrimental to Vopak's customer relations not only at the Deer Park facility but globally,[4] that two customers had threatened to pull their business if Vopak remained under ITC's thirty-five-railcars-per-day restriction,[5] and that the track 805 restriction and backlog issues were impairing Vopak's reputation.

This testimony supports the trial court's conclusion that "ITC's restrictions threaten to cause and will probably cause at least the following harm to Vopak: business disruption, loss of goodwill, loss of reputation in the marketplace, customer uncertainty, delays in servicing dock/sea customers, backlog costs, [and] demurrage fees[.]" While ITC attempted to controvert this evidence, the trial court was free to choose which evidence to credit and which evidence to discredit, and we must view the evidence in the light most favorable to the trial court's ruling. *See CRC–Evans Pipeline, Int'l*, 927 S.W.2d at 262.

■■■■■ Finally, we conclude that there is evidence in the record to support the trial court's conclusion that "at least some of the harm being suffered by Vopak cannot be remedied with the recovery of money." An injury is irreparable if it cannot be adequately remedied at law—i.e., if the injunction applicant cannot be adequately compensated in damages or if damages are very difficult to measure by any certain

pecuniary standard. *See Butnaru*, 84 S.W.3d at 204; *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 692 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *see also Lifeguard Benefit Servs., Inc. v. Direct Med. Network Solutions, Inc.*, 308 S.W.3d 102, 111 (Tex.App.-Fort Worth 2010, no pet.). "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Cardinal Health Staffing Network Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *see Dallas Anesthesiology Assocs.*, 190 S.W.3d at 897 (same). Thus, if damages do not provide as complete, practical and efficient a remedy as may be had by injunctive relief, the trial court does not err in granting temporary injunction so long as the other elements of injunctive relief are satisfied.

■■■■ The harm found by the trial court includes loss of goodwill and reputation in the marketplace. Threatened injury to a business's reputation and good will with customers is frequently the basis for temporary injunctive relief. *E.g., Lifeguard Benefit Servs.*, 308 S.W.3d at 118; *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex.App.-Fort Worth 2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 2061, 176 L.Ed.2d 414 (U.S. 2010); *T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd); *Townson v. Liming*, No. 06–10–00027–CV, 2010 WL 2767984, at *2–3 (Tex.

---

4. ITC argues that Vopak's contracts do not mandate delivery by railcar, such that Vopak could use other means of transportation without violating their contractual obligations. But ITC cites to only one contract for this proposition. Even if we were to accept ITC's contention that the cited contract does not require delivery by rail, it does not conclusively rebut the testimony offered by Vopak that it has many contracts with customers

that cannot be fulfilled if Vopak does not have adequate access to railway transportation.

5. ITC complains that Vopak did not prove that any customers actually did pull their business, but evidence of customers threatening to take their business elsewhere is some evidence of probable harm even if the customers have not yet executed the threat.

App.-Texarkana July 14, 2010, no pet.) (mem. op.); *Lionheart Co., Inc. v. PGS Onshore, Inc.*, No. 10–06–00303–CV, 2007 WL 1704906, at *2 (Tex.App.-Waco June 13, 2007, no pet.) (mem. op.); *RenewData Corp. v. Strickler*, No. 03–05–00273–CV, 2006 WL 504998, at *15–16 (Tex.App.-Austin Mar. 3, 2006, no pet.) (mem. op.). While such injuries are not categorically irreparable, the irreparable injury requirement is satisfied when injuries of this nature are difficult to calculate or monetize. *See, e.g., Frequent Flyer Depot*, 281 S.W.3d at 228 ("Disruption to a business can be irreparable harm. Moreover, assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy.") (internal citations omitted); *T–N–T Motorsports*, 965 S.W.2d at 24 (affirming temporary injunction based on testimony that lost goodwill would be "immeasurable"); *Townson*, 2010 WL 2767984, at *3 ("The value of lost patients, lost business contacts and collaborations, and lost hospital privileges are anything but fixed, settled, and indisputable. Rather, by their very nature, it is likely that Liming might never even be aware of specific patients and business contacts lost."); *RenewData*, 2006 WL 504998, at *16 ("Because it is difficult to assign a dollar value to loss of customer goodwill and clientele, it constitutes an irreparable injury.") (citing *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.-Houston [14th Dist.] 2000, pet. denied); *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 757 (Tex. App.-Houston [1st Dist.] 1982, no writ).

The testimony from Vopak's Gulf Coast General Manager supports the trial court's conclusion that the loss of reputation and goodwill threatened here would be "very difficult to calculate." He further testified that it would be "extremely difficult" to calculate the value of the Vopak brand in order to determine the fiscal impact of its reputational injury. Although ITC's damage expert indicated that he could calculate the value of a brand, he testified on cross-examination that it would be "rank speculation" to try to determine how much, if any, future business Vopak would lose if a customer terminated its relationship with Vopak due to rail transport issues. Moreover, the trial court was free to credit Vopak's evidence on this issue and discredit ITC's contrary evidence. Viewing the evidence in the light most favorable to the trial court's ruling, it supports the trial court's conclusion that the threatened injury to Vopak could not be adequately remedied at law. *See Lifeguard Benefit Servs.*, 308 S.W.3d at 113; *Frequent Flyer Depot*, 281 S.W.3d at 228; *T–N–T Motorsports*, 965 S.W.2d at 24; *Townson*, 2010 WL 2767984, at *3; *RenewData*, 2006 WL 504998, at *16.

Because there is evidence to support it, the trial court did not abuse its discretion in determining that Vopak would suffer probable, imminent, and irreparable harm in the absence of injunctive relief. *Cf. Butnaru*, 84 S.W.3d at 211–12 (holding that the trial court did not abuse its discretion when there was evidence to support its decision).

### C. Vopak presented evidence of a probable right to recover

ITC's final contention on appeal is that Vopak failed to established a probable right to recover on the merits, noting that the trial court struck through the portion of Vopak's proposed order containing an express finding of probable right to recover. We conclude that Vopak presented sufficient evidence of a probable right to recover on its declaratory judgment action against ITC and that the trial

court's order was not required to include a finding of probable right to recover.[6]

■ We recognize that courts are often particularly careful when it comes to the element of "probable right of recovery," sometimes referred to as "likelihood of success on the merits," because, by its plain language, this element seems to infringe upon two well-engrained judicial prohibitions: against advisory opinions and against forming opinions about the merits of the case before the conclusion of the evidence. But the phrase "probable right of recovery" is a term of art in the injunction context. *Glattly v. Air Starter Components, Inc.,* 332 S.W.3d 620, 638 (Tex. App.-Houston [1st Dist.] 2010, pet. denied). To show a probable right to recover, an applicant need not show that it will prevail at trial. *Butnaru,* 84 S.W.3d at 211 (citing *Sun Oil Co. v. Whitaker,* 424 S.W.2d 216, 218 (Tex.1968)). Nor does a finding of probable right of recovery indicate a trial court's evaluation of the probability that the applicant will prevail at trial. *Anderson Oaks (Phase I) Ltd. P'ship v. Anderson Mill Oaks, Ltd.,* 734 S.W.2d 42, 44 n. 1 (Tex.App.-Austin 1987, no writ) (observing that probable right to recover "does not imply that the applicant for temporary injunction must offer evidence and persuade the judge to find from that evidence the adjudicative facts necessary for the applicant to prevail on the merits, based on probabilities.... The hearing on temporary injunction does *not* constitute a *mini* trial, in advance, wherein the judge predicts the applicant's chances of success at the real trial, based upon the judge's estimate of where the truth probably lies concerning the adjudicative facts and the

law made applicable thereto by the pleadings in the case."). Consequently, a finding of probable right to recover has no precedential effect on the case at the trial stage. *See Glattly,* 332 S.W.3d at 638 (quoting *183/620 Group Joint Venture v. SPF Joint Venture,* 765 S.W.2d 901, 904 (Tex.App.-Austin 1989, writ dism'd w.o.j.) for proposition that finding of probable right to recover "does not imply any kind of determination that becomes the law of the case."); *see also Anderson Oaks,* 734 S.W.2d at 44 n. 1.

■ Instead, to show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it. *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961); *T–N–T Motorsports,* 965 S.W.2d at 23–24. The evidence must be sufficient to raise "a bona fide issue [ ] as to [the applicant's] right to ultimate relief." *183/620 Group Joint Venture,* 765 S.W.2d at 904; *see also Nw. Bank v. Garrison,* 874 S.W.2d 278, 281 (Tex.App.-Houston [1st Dist.] 1994, no writ); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.,* 234 S.W.3d 788, 797 (Tex.App.-Tyler 2007, no pet.). Vopak has met this burden by (1) pleading a declaratory judgment action seeking certain declarations regarding its right to use track 805 under the track usage agreement and at law and (2) presenting some evidence tending to support its alleged rights relating to use of track 805.

Initially, the parties dispute the nature of Vopak's declaratory judgment action. ITC frames Vopak's action as asserting that Vopak's right to use track 805 cannot be restricted in any way under any circum-

---

**6.** Vopak has asserted other cross-claims against ITC, including tortious interference with existing and prospective business relationships, unfair competition, antitrust violations, breach of contract, and suit to quiet title. Because an applicant is required only

to plead and present evidence to support one cause of action to establish a probable right of recovery, we need not reach whether Vopak has presented evidence to support these additional causes of action. *See Butnaru,* 84 S.W.3d at 211.

stances, and asserts that Vopak has not presented evidence to support its allegation of such unfettered use. Vopak frames its declaratory judgment action as asserting that it has a right to use track 805 free from ITC's thirty-five-railcars-per-day restriction based on historical practices and because Vopak's use did not interfere with ITC's use of the track. While Vopak's pleadings do contain assertions that ITC cannot interfere with its use of track 805, they also contain allegations that ITC may not terminate Vopak's right to use of track 805 or limit its use of the track to thirty-five railcars per day. Because neither party requested formal findings of fact and conclusions of law, we will uphold the trial court's order if any of these legal theories are supported by the record. *Frequent Flyer Depot*, 281 S.W.3d at 220.

The trial court has broad discretion in determining whether the pleadings and evidence support a temporary injunction. *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 851 (Tex.App.-Dallas 1990, no writ); *Pub. Util. Comm'n of Tex. v. Gen. Tel. Co. of the Sw.*, 777 S.W.2d 827, 829 (Tex.App.-Austin 1989, writ dism'd). Vopak's evidence regarding a right to use track 805 includes the track usage agreement and a related easement grant from Union Equity to Robertson Land. On its face, the track usage agreement grants Vopak, as successor to Robertson Land, the right to use track 805 to transport materials from Vopak's property, across ITC's property, to the PTRA's main rail line. The agreement does not contain an express provision for termination of this right. The agreement does expressly subject Vopak's use of the track to ITC's control "so as not to interfere with [ITC's] use [of the track.]" But Vopak introduced some evidence indicating that its use of the track was not interfering with ITC's own use of the track and that, despite long-term awareness of the track usage agreement, ITC had never before attempted to restrict Vopak's track use. Vopak also presented documentation of ITC's purchase of its property subject to the Robertson Land easement, extensive evidence of long-term use of track 805 by Vopak and its predecessors, and testimony indicating that ITC has never before complained about Vopak's track use, even when it exceeded 100 railcars in a single day. Viewing this evidence in the light most favorable to the trial court's injunction order, see *CRC–Evans Pipeline, Int'l*, 927 S.W.2d at 262, Vopak put forth some evidence tending to support at least one of the legal theories on which it seeks a declaratory judgment. Based on Vopak's allegations and this evidence, the trial court could have reasonably concluded that Vopak had a probable right of recovery. See *Butnaru*, 84 S.W.3d at 211.

The trial court entered the proposed temporary injunction order submitted by Vopak but made various delineations and alterations to the order. Among the trial court's changes, it struck-through and initialed a paragraph relating to Vopak's probable right of recovery:

The Court finds it is probable that Vopak will recover on at least one of its claims against ITC entitling it to use the lead track without a 35-car-per-day restriction. Accordingly, Vopak has a probable right of recovery on its claims that ITC cannot restrict its use of the lead track to 35 cars per day or any other restriction of car count.

In connection with its challenge to the evidence of a probable right of recovery, ITC points out the trial court's strike-through of this paragraph, asserting that it

indicates that the trial court did not find a probable right of recovery.[7]

 Rule 683 requires that an injunctive order "set forth the reasons for its issuance." TEX.R. CIV. P. 683. In the temporary injunction context, this Court has held that failure to comply with Rule 683 renders an injunction void. *City of Navasota v. Nationstar Mortg., LLC*, No. 01–08–00915–CV, 2009 WL 103510, at *1 (Tex.App.-Houston [1st Dist.] Jan. 9, 2009, no pet.) (mem. op.); *see also Indep. Capital Mgmt., LLC v. Collins*, 261 S.W.3d 792, 795 (Tex.App.-Dallas 2008, no pet.); *Auto-Nation, Inc. v. Hatfield*, 186 S.W.3d 576, 581 (Tex.App.-Houston [14th Dist.] 2005, no pet.). But we do not read Rule 683 as mandating that an injunctive order include a finding regarding the injunction applicant's probable right to recover in the injunctive order. *See* TEX.R. CIV. P. 683.

The Texas Supreme Court has held that Rule 683 mandates that a trial court granting a temporary injunction must explain in the order its reasons for believing that the applicant has shown that it will suffer injury if interlocutory relief is not granted but does not require the trial court to provide reasons for believing that the applicant has shown a probable right to final relief. *State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex.1971); *Transport Co. of Tex. v. Robertson Transports Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953); *see also, e.g., Moreno v. Baker Tools, Inc.*, 808 S.W.2d 208, 210 (Tex.App.-Houston [1st Dist.] 1991, no writ). An explanation of the pending harm to the temporary injunction applicant, along with a specific recitation of the conduct enjoined, is all that is necessary to achieve Rule 683's purpose: "to inform a party just what he is enjoined from doing and the reasons why he is so enjoined." *Transport Co. of Tex.*, 261 S.W.2d at 552. For these reasons, we hold

that Rule 683 does not mandate that the trial court's order expressly state that the trial court found a probable right of recovery. We decline to make any inferences from the trial court's decision not to include unnecessary language in its order.

### Conclusion

We hold that the trial court did not abuse its discretion in entering the temporary injunction order. The order does not impermissibly alter the status quo and is supported by sufficient evidence of probable, imminent, and irreparable harm and a probable right of recovery. We therefore affirm the temporary injunction order.

---

7. We requested supplemental briefing on this issue, which the parties provided.