In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00553-CV

_____

**XENON ANESTHESIA OF TEXAS P.L.L.C. AND MUJTABA ALI KHAN,**
**Appellants**

**V.**

**XENON HEALTH L.L.C. AND HAROON CHAUDHRY, Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-01-00014 CV**

**MEMORANDUM OPINION**

Xenon Health L.L.C. ("Xenon Health") and Haroon Chaudhry M.D. ("Chaudhry") sued Xenon Anesthesia of Texas P.L.L.C. ("Xenon Texas") and Mujtaba Ali Khan D.O. ("Khan") for breach of contract, tortious interference, and specific performance and obtained a temporary injunction against Xenon Texas and Khan. In this interlocutory appeal, Xenon Texas and Khan present five appellate issues challenging the trial court's imposition of a temporary injunction.

1

*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2012). We affirm the trial court's order.

## Factual Background

At the temporary injunction hearing, Chaudhry testified that he is the founder of Xenon Health and a licensed physician, but in that role, does not practice clinical medicine. Chaudhry explained that Xenon Health is an anesthesia management organization that obtains contracts to provide anesthesiology services to facilities throughout the country, recruits and contracts with anesthesia professionals to service these client facilities, and ensures that those professionals have the necessary malpractice insurance, supplies, and equipment. He testified that Xenon Health and its employees, including Chaudhry, do not administer anesthesia to patients. Chaudhry found two potential clients in Texas who needed these services immediately. However, Chaudhry testified that a Texas medical license and a professional corporation are required to perform services in Texas.

Chaudhry began the process of acquiring a Texas license and forming Xenon Texas. In the interim, the parties entered an agreement whereby Khan agreed to own Xenon Texas until Chaudhry became licensed to practice medicine in Texas. Chaudhry testified that, per this agreement, Kahn agreed to sell Xenon Texas to Chaudhry once Chaudhry became licensed. Chaudhry testified that Xenon Health

2

recruited, ordered and maintained supplies and equipment, ensured compliance with regulations, arranged billing and collections, and advanced funds for the establishment of Xenon Texas.

In December 2011, Chaudhry received a letter in which Kahn stated that Chaudhry failed to disclose an arrest and that Khan would be suspending the parties' agreement. Chaudhry explained that a former employee had filed a complaint against him, but the complaint was later dismissed and the records sealed, and that he had no duty to disclose this information to Khan. According to Chaudhry, Khan told the Texas clients that he would be assuming the day-to-day management of Xenon Texas. Although Chaudhry filed a lawsuit, Xenon Health continued providing services to Xenon Texas.

Chaudhry obtained his administrative medical license in October 2012. He explained that this type of license does not authorize the physical practice of clinical medicine, but allows a person to administer the practice of medicine within Texas. Chaudhry notified Khan that he had received his license, informed Khan of his desire to execute the purchase and sale agreement, and demanded that Khan provide Xenon Texas's net collections. Chaudhry testified that he was willing and able to pay the purchase price to execute the agreement. Chaudhry received no response from Khan.

Chaudhry testified that he values Xenon Health's "name as a brand in the field of anesthesia services[]" and that Xenon Health has a good reputation and has provided good services to its clients. He testified that Xenon Health is still providing services to Xenon Texas in hopes that the agreement will be executed and that Xenon Health will obtain control of Xenon Texas. Xenon Health pays for these services because it has no access to Xenon Texas's accounts, but Xenon Texas has reimbursed Xenon Health for some costs. He explained that he had spent time and resources establishing Xenon Health and its subsidiaries and that it would be very difficult to start over. Chaudhry was unaware of any instances in which Khan had transferred interests without Chaudhry's consent. However, Chaudhry believed it is possible that Khan would transfer his interests in Xenon Texas to a third party, remove Xenon Texas's assets during the pendency of the lawsuit, or alter existing business contracts and relationships. Chaudhry believed that money would be an inadequate remedy for the damages that would result.

## Irreparable Injury

In issues one and two, appellants contend that the trial court abused its discretion by granting the temporary injunction because, according to appellants, appellees failed to present evidence of either irreparable injury or future insolvency. Appellants argue that the testimony presented at the temporary

4

injunction hearing was speculative and did not establish that any funds are in danger of loss or depletion.

A temporary injunction preserves the status quo pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*. The decision to grant or deny a temporary injunction is within the trial court's sound discretion. *Id*. We may not overrule a trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles, and we cannot substitute our judgment for that of the trial court. *Id*. at 211. A trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Id*.

An irreparable injury occurs when the injured party cannot be adequately compensated in damages or the damages cannot be measured by any pecuniary standard. *Id.* at 204. "[G]enerally, a court will not enforce contractual rights by injunction, because a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available." *Id*. at 211. Additionally, fear and apprehension of injury cannot support a temporary

5

injunction. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 227 (Tex. App.—Fort Worth 2009, pet. denied). However, disruption to a business can constitute irreparable harm. *Id*. at 228. "[A]ssigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy." *Id*. "Threatened injury to a business's reputation and good will [sic] with customers is frequently the basis for temporary injunctive relief." *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In this case, the trial court heard testimony regarding Xenon Health's good reputation among its clients and the lengths to which appellees went to ensure Xenon Texas's success. The trial court also heard testimony that Khan does not have the experience that Chaudhry has with regard to an anesthesia management company. The trial court heard evidence that Khan had suspended an agreement that gave him limited authority to manage Xenon Texas and prohibited him from transferring his interests without Chaudhry's written consent, represented to Texas clients that he would be assuming the day-to-day management of Xenon Texas, refused to respond to Chaudhry's communications, and removed Chaudhry from Xenon Texas's accounts.

Given the evidence discussed above, the trial court could reasonably conclude that Khan's actions threatened the business reputation and goodwill of Xenon Texas and jeopardized Xenon Texas's relationship with its Texas clients. *See id*. Any transfer of interests or assets would certainly harm appellees' business and any award of damages would come too late to save appellees' business. *See TCA Bldg. Co. v. Nw. Res. Co.*, 890 S.W.2d 175, 179 (Tex. App.—Waco 1994, no pet.) (A situation in which damages alone are an inadequate remedy arises when the "damage award may come too late to save the applicant's business[.]"). Under these circumstances, we conclude that the trial court did not abuse its discretion by granting appellees' request for a temporary injunction to maintain the status quo. We overrule issues one and two.

Temporary Injunction Provisions

In issue three, appellants argue that the trial court's temporary injunction order allows Chaudhry to practice medicine without a medical license and, therefore, violates the Medical Practices Act. The temporary injunction prohibits appellants from "[c]ontacting client facilities, staffing companies, billing service providers, anesthesia providers and other business partners which have existing business relationships with Xenon Texas for the purpose of terminating or renegotiating existing agreements." Appellants contend that "Dr. Chaudhry wants

Dr. Khan to use his license to get contracts to provide anesthesiology care and staff for surgical sites in exchange for which Xenon Health, LLC would receive the profits made through Dr. Khan's practice of medicine, thereby indirectly allowing Xenon Health LLC to practice medicine without a license."

The practice of "administrative medicine" is the "administration or management utilizing the medical and clinical knowledge, skill, and judgment of a licensed physician, and capable of affecting the health and safety of the public or any person." 22 Tex. Admin. Code § 172.17(b) (2011) (Tex. Med. Bd.). "An administrative medical license does not include the authority to practice clinical medicine, prescribe dangerous drugs or controlled substances, or delegate medical acts or prescriptive authority." *Id.* at § 172.17(c). Chaudhry testified that he does not practice clinical medicine or administer anesthesia and that Xenon Health is an anesthesia management organization that provides administrative services to its clients. The record does not indicate that Chaudhry's practice or the services that his business provides conflict with the Texas Administrative Code's definition of "administrative medicine." *See id.* at § 172.17(b). We overrule issue three.

In issue four, appellants challenge a provision that enjoins them from making any expenditures or incurring any indebtedness or liabilities outside of the ordinary course of business, unless specifically authorized by the trial court. The

provision also prohibits Khan from using Xenon Texas funds for any claims by or against him in the lawsuit. Appellants maintain that because Chaudhry holds an administrative medical license, he cannot control or manage Xenon Texas.

Individuals licensed as doctors of medicine by the Texas State Board of Medical Examiners "may jointly form and own a professional association or a professional limited liability company to perform professional services that fall within the scope of practice of those practitioners." Tex. Bus. Orgs. Code Ann. § 301.012(a) (West 2012). Each practitioner's authority is limited by the scope of his practice. *Id*. at § 301.012(a-4).[1] "An organizer of the entity must be a physician and ensure that a physician or physicians control and manage the entity." *Id*. A physician is a "person licensed to practice medicine in this state." Tex. Occ. Code Ann. § 151.002(a)(12) (West 2012). A limited license to practice administrative medicine is a recognized type of limited medical license. *See id*. § 155.009 (West 2012). Chaudhry is a physician who received a limited medical license to practice administrative medicine. We perceive no violation of section 301.012(a-4). *See* Tex. Bus. Orgs. Code Ann. § 301.012 (a-4). We overrule issue four.

---

[1]In their brief, appellants erroneously cite to section 301.012(a-4) of the Texas Occupations Code instead of the Business Organizations Code.

## Bond

In issue five, appellants contend that the temporary injunction is void ab initio for lack of a proper bond. In a temporary injunction order, the trial court shall fix the amount of security to be given by the applicant. *See* Tex. R. Civ. P. 684. Before the injunction issues, the applicant shall execute and file with the clerk a bond in the amount set by the trial court to the adverse party. *See id.*

In its temporary injunction order, the trial court set a bond of $5000. Appellants complain that the bond was not made payable to them and that a cash bond was filed.[2] A party may deposit cash in lieu of filing a surety bond. *See* Tex. R. Civ. P. 14c; *see also Adobe Oilfield Servs., Ltd. v. Trilogy Operating, Inc.*, 305 S.W.3d 402, 404 (Tex. App.—Eastland 2010, no pet.). The trial court's order granting appellees' application for a temporary injunction was contingent on the filing of a bond. A cash deposit constitutes a proper bond and insures that appellees will abide by the decision in this cause and will pay all sums of money and costs adjudged against them should the temporary injunction be dissolved. *See Adobe*, 305 S.W.3d at 405. Because a cash deposit is a proper bond, we overrule issue five

---

[2]In their appendix, appellants attach documents reflecting that appellees deposited $5000 for the temporary injunction bond. These documents are not in the record and therefore cannot be considered on appeal. *See City of Beaumont v. Stewart*, No. 09-12-00316-CV, 2012 Tex. App. LEXIS 9052, at **7-8 n.1 (Tex. App.—Beaumont Nov. 1, 2012, no pet.) (mem. op.).

and affirm the trial court's order granting appellees' application for a temporary injunction.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on January 29, 2013
Opinion Delivered March 28, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.

11