

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00385-CV

Dean **DAVENPORT**, Individually and as Trustee of the CRD 2017 Trust, and
Jana Davenport,
Appellants

v.

**EOG RESOURCES, INC.**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2023-CVG-00491-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: August 9, 2023

AFFIRMED

This is an interlocutory appeal from temporary injunction orders. Ranch owners sued the

mineral estate leaseholder to restrict its access to their ranch to a specific entry gate and road. The

leaseholder balked, and both sides sought temporary injunctions. The trial court denied the ranch

owners' application and granted the leaseholder's application. Having reviewed the record, we

cannot conclude that the trial court abused its discretion. We affirm the trial court's orders.

## BACKGROUND

We recite the relevant alleged facts from the parties' pleadings and the appellate record.[1]

### A.    Ranch Purchase, Garner Lease

In 2020, Dean R. Davenport, his wife Jana, and the CRD 2017 Trust (collectively the Davenports) purchased four adjacent tracts in Webb County, comprising about 5,000 acres, to form a single ranch. The Davenport's ranch, as they knew when they purchased the tracts, was originally part of a larger tract burdened by a 1967 oil and gas lease (the Garner lease).

The Garner lease burdens tracts in northern Webb County; the burdened tracts are mostly east of U.S. Highway 83, north of State Highway 44, and miles west of Interstate Highway 35. The Garner lease has been operated since 1999 by EOG Resources, Inc. EOG's chief point of entry to the burdened tracts has been from U.S. Highway 83, but EOG was not conducting any oil or gas operations on the ranch's tracts when the Davenports purchased them.

### B.    Water Purchase Agreement

In January 2022, the Davenports[2] and EOG negotiated a Water Purchase Agreement. The Agreement calls for the parties to build a "Frac Pond" capable of holding at least 1,000,000 barrels of water, and for EOG to purchase fresh water from the Davenports for use in EOG's oil and gas operations on or off the ranch. The Agreement includes the following language:

> This Non Exclusive Take Or Pay Water Purchase Agreement (the "Agreement") sets forth terms and conditions, whereby [the Davenports] hereby grant [to EOG] for adequate consideration . . . the right of ingress and egress on designated roads for the purpose of producing, operating, and obtaining water from Grantor's Frac Pond . . . or designated water wells on [the ranch] . . . .
>
> For and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor and EOG agree as follows:

---

[1] We express no opinion about the truth of the parties' pleaded facts, witness testimony, or other evidence presented in the underlying case. Further, "[w]e limit the scope of our review to the validity of the order[s], without reviewing or deciding the underlying merits." *See Henry v. Cox*, 520 S.W.3d 28, 33–34 (Tex. 2017).

[2] The Agreement identifies the Davenports and two LLCs managed by Dean R. Davenport as the grantor.

. . .

8. EOG shall also have the right of vehicular and pedestrian access on Designated Roads reasonably necessary for the operation, use, and maintenance of the related facilities operated pursuant to this Agreement.

9. EOG shall enter and exit the Grantor's Lands through the Krueger Rd. gate. EOG agrees to use existing roads that will be designated by Grantor ("Designated Roads") over Grantor's Lands covered hereby for ingress and egress to the Frac Pond and/or designated water wells and agrees to maintain such roads in good condition at all times. EOG shall promptly repair any damage or ruts caused by EOG's use of Designated Roads.

. . .

20. EOG agrees to extend and incorporate herein all terms and provisions relating to assignments, releases, insurance, roads, surface and environmental issues set forth in the Lease; however, if the terms and provisions of this Agreement conflict with any other agreement, including the Lease, the terms and conditions of this Agreement shall control.

## C. EOG Traffic on the Ranch

In April 2022, the frac pond was completed. To access the water, EOG's vehicles began entering and leaving the ranch from Kreuger Road, which is not paved, and they used only the Kreuger Road entrance, which is on the ranch's east side.

In late 2022, EOG informed the Davenports of its plans to begin production from their ranch. EOG's plan was to site new wells and a production facility on the Davenports' ranch, to access the sites from the west via a new gate, and to reach the sites using a new road across the northern portion of the ranch.

The Davenports objected to EOG's plans.

## D. Litigation Begins

When EOG cut through the ranch's perimeter fence to create the new entrance, the Davenports sued to limit EOG's entry point to the Kreuger Road entrance. They argued that EOG already has access to the proposed sites and facility locations via Krueger Road; if a new road on their ranch is needed, there is a better route than the one EOG plans; and the new road is

unnecessarily close to the Davenports' home and will place their family and friends at greater risk of accident, injury, or death.

EOG counterclaimed; it alleged that the Davenports were interfering with its dominant estate rights under the Garner lease, and it sought a declaratory judgment to determine its rights under the lease. EOG asserted that Kreuger Road, in its current condition, was not capable of accommodating EOG's heavy equipment, restricting its ranch access to the Kreuger Road entrance would result in an indefinite delay in constructing the oil terminal—which would cause incalculable losses from delayed production and potential reservoir damage—and the new road that EOG would construct across the ranch would not interfere with any existing surface use.

Each side asked the trial court to grant a temporary injunction in its favor.

## E.    Hearing on Temporary Injunction Applications

On April 11, 2023, the trial court held an evidentiary hearing on the applications.

### 1.    EOG's Witnesses

EOG's witnesses testified to the following facts.

#### a.    Kreuger Road Issues

Kreuger Road cannot support the heavy equipment they need to move onto the ranch to drill and operate the planned pad sites, wells, and production facility. Specifically, there are four wooden bridges on Kreuger Road, and the bridges cannot safely support the 340,000-pound coil tubing rig needed for each well site. Kreuger Road has some below-grade low water crossings to get to the lease. In case of heavy rain, the road may become impassable, which would leave its people and equipment at the site stranded, and others unable to reach the site. EOG is working with the county to upgrade Kreuger Road to handle heavy loads, the upgrade should be complete in two years, and EOG will then use Kreuger Road to access the ranch.

b.      New Wells, Pads, Facility

EOG plans to create nine twelve-well pads and an associated production facility on the ranch.  The pads will be located just south of an existing east-west oil pipeline with the pads positioned as close to the pipeline as possible to minimize the surface impact.  The production facility location was selected to minimize the pressure drop for the development of the presently planned and future wells.



c.      New Road

EOG has been accessing its Garner lease wells on an adjacent ranch, which is north and west of the Davenport ranch, from the west using roads connected to U.S. Highway 83.



To access the new pads and production facility on the Davenport ranch, EOG planned to create a new entrance through a perimeter fence that runs along the northern boundary of the ranch and build a new road that runs primarily east-west across the northern portion of the ranch. EOG's vehicles would arrive from U.S. Highway 83, travel east across the adjacent ranch's roads, enter the Davenport ranch from the northwest via a new gate, and traverse the planned east-west road to access the locations for the new pad sites, wells, and production facility.

EOG's planned new road will be located south of the new pad sites to avoid crossing the forty-five pipelines that will extend northward from the pad sites. The planned new road is designed to safely support all the heavy equipment, and it is needed now to avoid irreparable injury.

   d.  <u>Irreparable Injury</u>

The irreparable injury EOG seeks to avoid is an unrecoverable loss of hydrocarbons based on a delay in offsetting production beyond one year. Here, the initial wells were drilled in April 2022. After between one and two years, production from subsequent wells will be harmed, and

by two years, "the damage has pretty much been done," and there will be hydrocarbons that are irretrievably lost.

### 2. Davenports' Witness

Dean Davenport was the Davenports' only witness; he testified to the following facts.

#### a. Kreuger Road Issues

He drove Kreuger Road with EOG representatives, and they did not express any concerns about using Kreuger Road for their equipment. He has seen drilling rigs, vacuum trucks, and coil tubing rigs using Kreuger Road, and he has seen heavy equipment use the wooden bridges. He acknowledged that EOG raised safety concerns about using Kreuger Road in case of heavy rains, and EOG asked about exiting his ranch to the west using his roads that lead to Highway 83.

#### b. New Gate, New Road Issues

Davenport opposes EOG's planned route for its new road across his ranch for several reasons: it will cross a new asphalt road he had built; it will damage existing water lines running across his property; and the new entrance is near to, and visible from, his home. He is worried for the safety of his young son, relatives, friends, and employees because of the number of vehicles that will be transiting near his home and barns.

### F. Temporary Injunction Orders

After the parties rested and closed, the trial court found that Kreuger Road was not "capable of sustaining the operations for EOG." The trial court stated its intent to grant EOG's requested relief.

On April 12, 2023, the trial court signed an order which denied the Davenports' application for a temporary injunction. The same day, it signed another order which granted EOG's application: it found certain facts, and it enjoined the Davenports from interfering with EOG's

access to the ranch. But the order included a finding that the trial court had expressly stated should not be included.

After the Davenports pointed out the error, on May 15, 2023, the trial court signed an amended order: it omitted the proscribed finding and replaced the earlier order granting EOG's application.

## G. Parties' Arguments

The Davenports assert that under the Agreement, EOG agreed to enter the ranch through only the Kreuger Road gate, and when EOG created a new entrance and began accessing the ranch through it, EOG breached the Agreement and disrupted the status quo. According to the Davenports, the applicable status quo ante was EOG accessing the ranch exclusively through the Kreuger Road entrance, and the trial court erred by failing to preserve that status quo when it denied their application and granted EOG's application.

EOG argues the Agreement pertains only to its activities to produce, operate, and get water from the Frac Pond. It insists that the Agreement does not restrict its preexisting rights of access under the Garner lease, and the status quo ante was its previously unhindered access to the ranch for its oil and gas operations.

We begin with the trial court's order granting EOG's application for a temporary injunction.

### EOG's Application for Temporary Injunction

Before we address the parties' arguments, we briefly recite the applicable law and standard of review.

## A. Temporary Injunction Requirements

The purpose of a temporary injunction "is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204

(Tex. 2002); *accord Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 272 (Tex. App.—San Antonio 2012, no pet.).

Ordinarily, "[t]he party applying for a temporary injunction 'must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable[,] imminent, and irreparable injury in the interim.'" *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (per curiam) (quoting *Butnaru*, 84 S.W.3d at 204).

## B.     Standard of Review

"Whether to grant or deny a temporary injunction is within the trial court's sound discretion." *Butnaru*, 84 S.W.3d at 204; *see Anti-Defamation League*, 610 S.W.3d at 916.

On appeal, "the court of appeals cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *Butnaru*, 84 S.W.3d at 211; *see Argo Group US, Inc. v. Levinson*, 468 S.W.3d 698, 700 (Tex. App.—San Antonio 2015, no pet.) (op. on reh'g).  "The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Butnaru*, 84 S.W.3d at 204; *accord Washington v. Associated Builders & Contractors of S. Tex. Inc.*, 621 S.W.3d 305, 311 (Tex. App.—San Antonio 2021, no pet.).

"We review the evidence in the light most favorable to the trial court's order and indulge all reasonable inferences in favor of the decision." *Argo Group*, 468 S.W.3d at 700; *accord Washington*, 621 S.W.3d at 311.  "In resolving evidentiary matters, a trial court does not abuse its discretion 'if some evidence reasonably supports the court's ruling.'" *Anti-Defamation League*, 610 S.W.3d at 916 (quoting *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017)); *accord Davis v. Huey*,

571 S.W.2d 859, 862 (Tex. 1978) ("An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence.").

## C.    Cause of Action

The first element EOG had to plead and prove was a cause of action against the Davenports. *See Butnaru*, 84 S.W.3d at 204.  In its original petition, EOG sued the Davenports and asked the trial court to determine the parties' respective rights under the Garner lease.  EOG attached a copy of the Garner lease, which grants the lessee the right to explore, develop, and produce oil and gas from the subject tracts.  It also attached other documents purporting to show that EOG was the present leaseholder, and Davenport acknowledged that all of the Davenport ranch was subject to the Garner lease.  EOG presented its request as a declaratory judgment action, which is a statutory cause of action.  *See Brennan v. City of Willow Park*, 376 S.W.3d 910, 922 (Tex. App.—Fort Worth 2012, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.004) (recognizing a declaratory judgment action as a statutory cause of action); *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 100 S.W.3d 510, 515 (Tex. App.—Austin 2003, pet. denied) (same).

Reviewing the evidence in the light most favorable to the trial court's order, and making all reasonable inferences in its favor, we conclude there was some evidence to reasonably support the trial court's finding that EOG pled and proved a cause of action against the Davenports.  *See Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Washington*, 621 S.W.3d at 311 (favorable light, reasonable inferences).

## D.    Probable Right to Recover

The second element EOG had to plead and prove was its probable right to the relief sought. *See Butnaru*, 84 S.W.3d at 204.  "[T]o show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it." *Intercontinental Terminals*

*Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Butnaru*, 84 S.W.3d at 211.

The Davenports acknowledged that their ranch is subject to the Garner lease, but they argued that the Water Purchase Agreement restricts EOG's access to the Kreuger Road gate, and this limited access from Kreuger Road was reasonable. Davenport testified that he had seen drilling rigs, vacuum trucks, and coil tubing rigs using Kreuger Road, including the wooden bridges. He acknowledged he did not know what the maximum safe weight rating was for the bridges, but trucks could bypass the bridges by driving on the dirt paths that skirt around the bridges.

EOG argued that, as the leaseholder, it was entitled to create a new entrance and road because each was reasonably necessary for it to access the planned sites, construct the production facility, drill the wells, and produce the oil and gas as planned. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 48 (Tex. 2017) (recognizing that the mineral estate owner "has the right to use as much of the surface 'as is reasonably necessary to produce and remove the minerals' encompassed by the lease" (quoting *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 621 (Tex. 1971))).

EOG's witnesses testified that Kreuger Road's four wooden bridges cannot safely support the 340,000-pound coil tubing rig needed for each well site. The road has some below-grade low water crossings to get to the lease, and in case of heavy rain, the road may become impassable. In that case, its people and equipment at the site could be stranded and others could be prevented from reaching the site.

As the factfinder, the trial court could choose to give greater weight and credibility to EOG's evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000). It could have credited EOG's evidence

showing why access through the Kreuger Road gate is not feasible and its new gate and road are reasonably necessary to produce and remove its oil and gas. *See City of Keller*, 168 S.W.3d at 819; *see also Anti-Defamation League*, 610 S.W.3d at 916 ("In resolving evidentiary matters, a trial court does not abuse its discretion 'if some evidence reasonably supports the court's ruling.'" (quoting *Henry*, 520 S.W.3d at 34)); *Frey v. CST Props., LLC*, No. 04-13-00450-CV, 2014 WL 783324, at *5 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (citing *Butnaru*, 84 S.W.3d at 211) ("The trial court does not abuse its discretion . . . if [it] bases its decision on the probable right of recovery on conflicting evidence.").

Reviewing the evidence in the light most favorable to the trial court's order, and making all reasonable inferences in its favor, we conclude there was some evidence to reasonably support the trial court's finding that EOG demonstrated its probable right to the relief sought. *See Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Butnaru*, 84 S.W.3d at 211 (probable right); *Washington*, 621 S.W.3d at 311 (favorable light, reasonable inferences).

## E.    Irreparable Injury

The third element EOG had to plead and prove to obtain a temporary injunction was "a probable, imminent, and irreparable injury in the interim." *See Butnaru*, 84 S.W.3d at 204. EOG pled and its witnesses testified that it needed to timely develop the planned facilities and forcing it to access the ranch through the Kreuger Road gate would delay or deny its necessary development. Its reservoir engineer testified that the adjacent wells were drilled in April 2022, and delaying development of the planned wells and production facility would harm future production. He added that after two years, the damage to the wells and the reservoir could be permanent, and some hydrocarbons would be irretrievably lost. EOG insisted that the damages it would incur "would be difficult, if not impossible, to calculate."

*1.      Applicable Law*

"An injury is irreparable . . . if the damages cannot be measured by any certain pecuniary standard."  *Id.*; *accord Washington*, 621 S.W.3d at 311.  "[The temporary injunction order must] give the reasons why injury will be suffered if the interlocutory relief is not ordered."  *Grounds v. First GroundRock Royalties, LLC*, 629 S.W.3d 674, 676 (Tex. App.—San Antonio 2021, no pet.) (quoting *State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971)); *accord Hoist Liftruck Mfg. v. Carruth-Doggett, Inc.*, 485 S.W.3d 120, 122–23 (Tex. App.—Houston [14th Dist.] 2016, pet. withdrawn)).

*2.      Injunction Order*

The trial court's order granting EOG's application, in compliance with Rule 683, identified the irreparable injury.  *Cf. Grounds*, 629 S.W.3d at 676 (citing TEX. R. CIV. P. 683); *Hoist Liftruck Mfg.*, 485 S.W.3d at 122–23.  It expressly found that if the injunction did not issue, EOG would suffer an indefinite delay in constructing the new facilities which would cause a loss of production, lost revenue, and potential permanent reservoir damage to existing and new wells, and the resulting loss could not be readily calculated.

Reviewing the evidence in the light most favorable to the trial court's order, and making all reasonable inferences in its favor, we conclude there was some evidence to reasonably support the trial court's finding that EOG demonstrated probable, imminent, and irreparable injury if the injunction did not issue.  *See Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Butnaru*, 84 S.W.3d at 204 (irreparable injury); *Washington*, 621 S.W.3d at 311 (favorable light, reasonable inferences).

## F.      Temporary Injunction Elements

As we have discussed, there was some evidence that reasonably supports the trial court's findings that EOG pled and proved each essential element to be entitled to a temporary injunction:

(1) a cause of action; (2) a probable right to the relief sought; and (3) probable, imminent, and irreparable injury if the injunction did not issue. *See Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Butnaru*, 84 S.W.3d at 204 (temporary injunction elements). Accordingly, we cannot conclude that the trial court abused its discretion in granting EOG's application for a temporary injunction. *See Anti-Defamation League*, 610 S.W.3d at 916; *Butnaru*, 84 S.W.3d at 211.

We turn now to the trial court's order denying the Davenports' application.

### DAVENPORTS' APPLICATION FOR TEMPORARY INJUNCTION

In their amended petition, the Davenports presented three claims against EOG: (1) trespass to real property, (2) violation of the reasonably necessary requirement, and (3) breach of contract. They also sought a temporary injunction to enjoin EOG from (1) entering or exiting their ranch by any other gate than the Kreuger Road gate, (2) accessing the proposed new sites using any road other than the one they designated, (3) creating a new gate or constructing a new road, and (4) clearing land for a new road. They argued that they pled and proved a cause of action, a probable right of recovery, and an irreparable injury, and they asked the trial court to grant their application. *See Butnaru*, 84 S.W.3d at 204 (temporary injunction elements).

But the trial court denied the Davenports' application, and we have already concluded it did not abuse its discretion in granting EOG's application. Therefore, the trial court necessarily found that the Davenports had not pled and proved each essential element of a temporary injunction. *See id.* For example, the trial court may have concluded that the Water Purchase Agreement applied only to EOG's water production activities, and the Agreement's terms did not control over EOG's right to its reasonably necessary use of the ranch to produce and remove its oil and gas.

Without addressing the merits of the parties' respective causes of action, we conclude "that at least some basis exists upon which the trial court could have properly held that the [Davenports] were not entitled to a temporary injunction pending the final hearing." *See Davis*, 571 S.W.2d at 863; *Intercontinental Terminals*, 354 S.W.3d at 892 ("Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merits of the underlying case.").

Reviewing the evidence in the light most favorable to the trial court's order—which denied the Davenports' application—and making all reasonable inferences in favor of the order, we cannot conclude the trial court abused its discretion in denying the Davenports' application for a temporary injunction. *See Anti-Defamation League*, 610 S.W.3d at 916; *Butnaru*, 84 S.W.3d at 211.

## CONCLUSION

Having reviewed the evidence in the light most favorable to the trial court's orders and having made all reasonable inferences in favor of its rulings, we cannot conclude that the trial court abused its discretion in granting EOG's application for a temporary injunction or in denying the Davenports' application for a temporary injunction.

Accordingly, we affirm the trial court's orders.

Patricia O. Alvarez, Justice