

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00034-CV

JOSH AND KELLI SAVERING,
CHATTANYA CHAVDA,
PANNABEN NANCHA, PHILLIP
AND LISA KLOTZ, PAUL
ARSENEAU, ALLISON
BLACKSTEIN, AND JACK A.
MUHLBEIER

APPELLANTS

V.

CITY OF MANSFIELD

APPELLEE

----------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 348-270155-14

----------

## OPINION

----------

## I. Introduction

In a single issue, appellants Josh and Kelli Savering, Chattanya Chavda, Pannaben Nancha, Phillip and Lisa Klotz, Paul Arseneau, Allison Blackstein, and Jack A. Muhlbeier appeal an interlocutory order denying their amended application for a temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2015). They complain that the trial court abused its discretion by denying the temporary injunction, claiming that their evidence established each of the elements required to support that relief. Because the trial court did not abuse its discretion by denying their amended application for temporary injunction, we affirm.

## II. Background

The instant appeal arises from a dispute between appellee the City of Mansfield and the appellants—residential homeowners in the Estates of Creekwood, a gated community—over ownership of property adjacent to the appellants' homes and to a creek. Appellants included the following demarcated plat in their appendix, which we reproduce here solely to provide context:

2



The R2 lots—the property at issue here—are outlined in red, the floodways are outlined in blue, and a jogging path is marked in green. The residential lots belonging to the appellants abut the R2 lots along the eastern and southern parts of the development.

After the City built a bridge over the creek to connect the property at issue to a public park, the appellants sued their homeowners' association (HOA) and the City, seeking a declaratory judgment that the HOA owned the property and

3

seeking to quiet title to the property.[1]  They also brought against the City a claim

for trespass, for breach of restrictive covenants, and for inverse condemnation.

And, at issue here, they sought injunctive relief to stop the public from using the

bridge both in the interim and permanently.

In their application for injunctive relief, the appellants asked the trial court

to order the following:

1. That the City, City Officials and/or Mansfield Corp. shall
   immediately place a temporary barricade on the Walnut Creek
   Bridge that will prevent and/or deter access to the Estates of
   Creekwood by the general public.

2. That the City, City Officials and/or Mansfield Corp. shall be
   immediately prohibited from entering, or encouraging others to
   enter, the Estates of Creekwood.

3. That the City, City Officials and/or Mansfield Corp. place a valid
   and legally enforceable "no trespassing" sign on the barricade
   that will be enforceable by the City of Mansfield Police
   Department.

## III.  Discussion

### A.  Standard of Review

The purpose of a temporary injunction is to preserve the status quo of the

litigation's subject matter pending a trial on the merits.  *Butnaru v. Ford Motor

Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g).  A temporary injunction is an

---

[1]The appellants sued the City before the bridge opened in January 2014, arguing that the lots had been conveyed to the HOA as part of the "Common Properties" by dedication in a declaration instead of to the City by deed.  The appellants sued the HOA for breach of contract and for breach of the duty to act in good faith, with ordinary care, and in the best interest of the HOA members.

4

extraordinary remedy and will not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* To establish a probable right to relief, a party is not required to prove that it will prevail at a final trial in order to invoke the trial court's discretion to grant a temporary injunction. *Oil Field Haulers Ass'n v. R.R. Comm'n*, 381 S.W.2d 183, 196 (Tex. 1964). Rather, a probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 559 U.S. 1036 (2010).

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

## B. Relief Sought

The appellants argue that they established a probable right to relief and will suffer probable and irreparable injury absent a temporary injunction.[2] *See Butnaru*, 84 S.W.3d at 204.

---

[2]They also contend that the trial court abused its discretion by denying the temporary injunction because they established their right to seek injunctive relief

The appellants sought both prohibitive and mandatory temporary injunctions. A prohibitive injunction forbids conduct, while a mandatory injunction requires it. *Lifeguard Benefit Servs., Inc. v. Direct Med. Network Solutions, Inc.*, 308 S.W.3d 102, 112 (Tex. App.—Fort Worth 2010, no pet.) (citing *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). A mandatory injunction is proper only when necessary to prevent irreparable injury and extreme hardship, *id.*, and it should be denied absent a clear and compelling presentation of such extreme necessity or hardship. *RP&R, Inc.*, 32 S.W.3d at 400–01. The appellants asked the trial court to make the City put a temporary barricade and "no trespassing" signs on the bridge.[3] These requests, if granted, would have required the City to take action through the expenditure of taxpayer dollars and use of police enforcement. Therefore, they are mandatory injunctions.[4]

---

in the form of valid causes of action against the City—trespass and breach of restrictive covenants. The City replies that the appellants' causes of action are predicated on their underlying assertion that the HOA owns the lots and that because their underlying assertion is incorrect, the trial court could not have abused its discretion by denying the injunction. Because we resolve this issue on the question of proof of irreparable injury, we do not reach these arguments. *See* Tex. R. App. P. 47.1.

[3]By the time of the November 17, 2014 hearing, the bridge—which opened on January 25, 2014—had been open for almost nine months. Therefore, the only way to prohibit the City from entering or encouraging others to enter the bridge would have been through the placement of signs and barricades to prevent or deter access.

[4]The prohibition on entry by the City or its encouragement to others to enter the property was tangential to these mandatory requests. That is, the way

6

## 1. Evidence

Michael Goodrich, an attorney board-certified in commercial real estate law, testified on behalf of the appellants at the injunction hearing. He stated that when he inspected the neighborhood, he walked the entire jogging trail. There was a portion of the trail that could be accessed outside of the gated community even without using the City's bridge. He said that the access point, through another neighborhood, was "a pretty good distance" from the bridge and was a very narrow entrance.

Kelli Savering, one of the appellants, testified that when she bought her home in April 2011, she believed that the neighborhood was gated based on what her real estate agent told her. She saw gates when she toured the property and understood that the gates' purpose was for security and privacy. Savering said that she was not told at that time that the land behind her house was a public park, did not learn about the bridge construction project until May 2013, and said that she would not have purchased the home if she had known there would be a public park behind it. Savering stated that she and the other adjoining homeowners had always taken care of maintaining the property at issue, mowing the grass and picking up any debris. Before the bridge was opened, the flow of traffic onto the property at issue was very minimal.

---

the City would accomplish the prohibitive relief of not entering or encouraging entry would be by erecting the barricade, by placing a "no trespassing" sign on the barricade, and by using the police department to enforce the sign.

Savering testified that during the ten months after the bridge opened, she had seen people fishing in the private lake, taking photos, picnicking on the property at issue, and using small motor vehicles on it. During nice weather, the property drew 25 to 100 people on weekdays and 100 to 250 on weekends. This concerned her because her neighborhood was no longer secure, and she was concerned about safety. She had a swimming pool in her backyard, and the public could see her and her family use the pool and their backyard, destroying her sense of privacy. No fence separated the public from the private lake because it was a floodway. Savering said that the Mansfield Parks Department had put up a few signs to keep the public off of her property and away from the lake but that the signs had not been effective.

During cross-examination, Savering said that of the 25 people on average that cross the bridge in a week, "[t]here's probably one or two a week" that go onto the homeowners' private property. The only damage she was aware of was the public's fishing and the trash residents had had to pick up. She acknowledged having known about the Walnut Creek Linear Trail Project but said that she "didn't know it was going to come in [her] backyard," even though she knew Walnut Creek ran along the rear of her property. Savering also acknowledged never having looked at her property's restrictive covenants to determine the type of security the covenants provided regarding pedestrian access to the neighborhood, although she was provided with a copy of the restrictive covenants at the time that she bought the property. Savering admitted

8

that she had known there was an entryway to the trail that led along the creek area that had been there since she had purchased the property. She testified during her direct examination that the access point was through a nearby neighborhood, between two homes, and that to her knowledge, only the people in that neighborhood had used the access point before January 2014, resulting in very minimal foot traffic.

Savering stated that while her swimming pool was not directly adjacent to the trail, the lake was, and she claimed that she owned the lake along with seven other homeowners in the neighborhood. Savering said that her only personal damage was the loss of privacy in her backyard, some lost tax value on her home, and the loss of her expectation of safety, which she said would be impossible to quantify.

Brian Brandstetter, an attorney who had lived in the neighborhood since 1996 and was a member of the HOA's board of directors, testified that the board of directors had determined that the property at issue did not belong to the HOA.[5]

---

[5]The dissent's statement on page 7 that "the HOA's interpretation is binding only 'in the absence of an adjudication by a court of competent jurisdiction' that concludes otherwise," disregards section 10.02's provision that the court of competent jurisdiction has to adjudicate "that any such action was *an abuse of discretion*." [Emphasis added.] This is a much higher standard, and the issue of whether the Board abused its discretion in the interpretation of the Declaration has not yet been litigated. Further, the requirement that an abuse of discretion be proved makes sense in light of the circumstances of this case— certainly before a third party may thrust the burdens of property ownership upon the HOA, including the obligation for payment of taxes, liability insurance premiums, and upkeep and maintenance services, the HOA should be afforded

Brandstetter stated that when he moved into the neighborhood in 1996, the trail, which he referred to as a jogging path, already existed on the property at issue.

## 2. Analysis

The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). And an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru*, 84 S.W.3d at 211. The trial court had the discretion to believe or disbelieve any of the testimony, to determine that the additional pedestrian access provided by the bridge—when the neighborhood had already had a pedestrian access point that Savering was aware of when she bought her home—did not constitute irreparable injury or extreme hardship, and to conclude that the appellants had not made a clear and compelling presentation of extreme necessity or hardship. *See RP&R, Inc.*, 32 S.W.3d at 400–01. Therefore, the trial court did not abuse its discretion by denying the requested mandatory injunctive relief or the related, tangential prohibitive relief. We overrule the appellants' sole issue without reaching the remainder of their arguments. *See* Tex. R. App. P. 47.1.

the right to determine in the first place whether it asserts any ownership interest in the property.

## IV. Conclusion

Having overruled the appellants' sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: GARDNER, MEIER, and SUDDERTH, JJ.

MEIER, J., filed a dissenting opinion.

DELIVERED: January 21, 2016